Argued May 28, affirmed July 15, 1924.

HILARIO BARBER AND MIKE BIDEGARY v.
S. A. JETMORE, HERBERT P. WELCH AND
D. T. GODSIL.

(227 Pac. 523.)

**Attorney and Client—Evidence Held to Show That Client Made Contract With Attorney for His Defense in Criminal Prosecution With His Eyes Open.**

1. Evidence *held* to show that client made contract by which attorney, for consideration of $5,000, agreed to defend him under an indictment for assault with intent to kill, through all possible exigencies of the case, with his eyes open, and was not deceived by reason of his ignorance, or by any misunderstanding of the circumstances.

**Attorney and Client—Fee of $5,000 for Defense of Defendant, Charged With Intent to Kill not Unconscionable as a Matter of Law.**

2. Court could not say as a matter of law that a fee of $5,000, for which attorney agreed to defend client, under indictment for assault with intent to kill, through all possible exigencies of the case, in view of all possible contingencies as they appeared at time, was so exorbitant as to be unconscionable.

111 Or.—35

**Equity—Court Held to have Jurisdiction to Decree Payment of Note.**

3. In suit to cancel note, court of equity had jurisdiction to decree payment of a note, where holders were brought into case at instigation of plaintiffs and asked for a decree in their favor, to which no objection was made.

**Equity—Obtaining Jurisdiction for One Purpose will Proceed to Final Determination of the Matter.**

4. Where equity has obtained jurisdiction for one purpose, it will proceed to a final determination of the matter without relegating parties again to law courts and requiring merits to be relitigated.

From Lake: H. H. BELT, Judge.

Department 1.

This is a suit brought by the plaintiffs to set aside and cancel a promissory note given by the plaintiffs to the defendant S. A. Jetmore in payment of an alleged balance of attorney's fees which Mr. Jetmore claims to have been due him for defending the plaintiff Hilario Barber against a criminal charge of assault with intent to kill, placed in the Justice's Court in Lake County, upon which the grand jury returned an indictment for assault with a dangerous weapon. The complaint further asks for an accounting in respect to fees already paid defendant Jetmore.

The plaintiffs claim, in effect, that the plaintiff Barber is foreign born, cannot read or write the English language, and can only speak or understand the same with difficulty; that he is inexperienced in the ways and customs of courts and lawyers; that up to April 9, 1920, he had accumulated about $3,000; that Barber, while acting in self-defense, inflicted an injury upon one George Wood, and that he was indicted by the grand jury, charged with the crime of assault with a dangerous weapon; that a trial was had, resulting in a hung jury, and that afterwards Barber entered a plea of guilty and paid a fine, which,

including costs, amounted to $646; that on the ninth
day of April, 1920, Barber employed defendant Jet-
more to defend him in said criminal action, and that
Jetmore continued to act as his attorney until the
fine was paid and Barber discharged.  Plaintiffs fur-
ther allege that at the time of such employment Jet-
more, well knowing the inexperience and ignorance
of said Barber, and his financial condition, and with
the intention of defrauding and overreaching him and
obtaining an exorbitant fee from him, falsely repre-
sented to Barber that the charge against him was a
very serious one, and that he would probably be sent
to the penitentiary for twenty years unless he had a
proper defense; that it was necessary that Barber
raise $2,500 for such defense, and that it had cost
one Clay Fisher, in a case of similar nature, the sum
of $10,000; that the various amounts exacted were
absolutely necessary and proper for court costs, ex-
penses and attorney's fees in defending said criminal
charge.  It is then alleged that in truth and in fact
said criminal case was not serious, and that it was
not necessary to raise $2,500, or any sum in excess
of $300, for such defense; that the statement in re-
gard to the defense of the said Clay Fisher was false,
and that it had cost less than $1,000 to secure an
acquittal in the case referred to, and that the various
amounts of money demanded by defendant Jetmore
were not necessary in defending said criminal charge;
that Barber relied upon and believed said false and
fraudulent statements and was greatly frightened, and
believed at the time that unless he produced the
amounts of money demanded by said S. A. Jetmore
he would necessarily have to serve twenty years in
prison; that believing and acting upon such false and
fraudulent statements, and while laboring under the

fright, terror and coercion produced by such statements, Barber paid to defendant Jetmore the sum of $3,000, as follows: $300 on or about April 9, 1920, $1,700 on or about April 10, 1920, and $1,000 on or about June 18, 1920; that on or about June 18, 1920, and immediately before the sum of $1,000 ,was paid to Jetmore, and at a time when said Barber was unable to pay any further sums in cash, said S. A. Jetmore knowingly and fraudulently represented to Barber that it was absolutely necessary, at that time, to have the sum of $2,500 in order to make a defense for Barber, and that unless such sum could be raised the defense of Barber would stop and Barber would go to the penitentiary; that in truth and in fact it was not necessary at that time to raise any additional sum for said defense, and that there was no danger whatever of said Barber being committed to the penitentiary; that plaintiffs relied upon such false and fraudulent statements of said S. A. Jetmore, and firmly believing that such sum was necessary for such defense and that unless said amount of money was raised the defense of said Barber would stop and he would have to go to the penitentiary, plaintiffs made, executed and delivered to S. A. Jetmore their joint and several promissory note, dated June 18, 1920, and due September 1, 1920, for the principal sum of $1,500, bearing interest at eight per cent, and providing for the usual attorney's fee in case suit or action should be instituted; that plaintiffs are informed and believe, and therefore allege that said S. A. Jetmore ever since has been and now is the owner and holder of said promissory note; that the reason for making such allegation is that plaintiff Mike Bidegary saw the defendant Jetmore in possession of said note after its maturity, and he was

endeavoring to collect the same from said Bidegary; that if said defendant Jetmore is entitled to any fee at all, by reason of his services in said criminal action, such fee should not exceed the sum of $250; that defendants Herbert P. Welch and D. T. Godsil claim to have some interest in said promissory note, but such interest or claim is subsequent in time and inferior in right to the claims of plaintiffs and of their cause of suit; that plaintiffs have no plain, adequate or complete remedy at law. Then follows a prayer for an accounting between Barber and defendant Jetmore, and that said defendant Jetmore be required to give a detailed statement of the uses and application of the money paid him; and that an account be stated between them, and that plaintiff Barber have a decree and judgment for such sum as may be found due him; and, further, that defendant Jetmore be required to produce said note in court, and that a decree be entered canceling and annulling said note and forever inhibiting said defendants from taking any action towards the collection of the same.

Defendant Jetmore, answering for himself, admitted the fact of having been retained as attorney for the plaintiff Barber; denied that Barber acted in self-defense in his encounter with George Wood, and denied all the charges of fraud and misrepresentation. As an affirmative defense Jetmore alleged that on or about April 9, 1920, he contracted and agreed to perform services for said Barber in a criminal action then pending, wherein Barber stood charged with the crime of assault with intent to kill; that by the terms of said contract such services were to include any and all legal formalities or services which might be necessary in such defense, before the court in which such action was then pending, namely, the Justice's Court,

and any. and all other courts in which such action might be prosecuted or appealed, to and including the Supreme Court of the state; in consideration whereof the said Barber undertook and agreed to pay to defendant Jetmore the sum of $5,000, such sum to be paid prior to the time said cause should be tried in the Circuit Court; that defendant Jetmore fully complied with and carried out all of the conditions of said contract on his part to be performed, and that, pursuant to said contract, Barber paid to defendant Jetmore the following sums of money, to wit: the sum of $300 on or about April 9, 1920; the sum of $1,700 on or about April 10, 1920, and the sum of $1,000 on or about June 18, 1920, and no more. Defendant then alleges that on or about June 18, 1920, the business in which said Barber was then engaged, namely, the business of sheep-raising, was in an unsettled condition, to such an extent that the assets of said Barber were greatly depreciated in value; that, in view of these circumstances, defendant Jetmore offered to accept from Barber, in full settlement of the balance then remaining due, the sum of $1,000 in cash and his promissory note in the sum of $1,500, provided that Barber would secure on the note, in addition to his own signature, the signature of another person to be approved by defendant Jetmore; that thereupon Barber caused to be made, executed and delivered to defendant Jetmore the joint and several promissory note of himself and plaintiff Bidegary, in favor of Jetmore, already mentioned, and that Jetmore thereupon accepted said note in full settlement of said balance; that said promissory note is the same note referred to in plaintiffs' amended complaint, and that the transactions surrounding the giving and accepting of said note were and are as set forth in defendant's

affirmative defense, and not otherwise. It was further alleged that on the twenty-first day of June, 1920, and prior to the maturity thereof, defendant Jetmore, for a valuable consideration, sold, assigned and transferred said note to defendants Welch and Godsil, and that at no time since then has Jetmore had, or has he now, possession of, or control over, said promissory note. There was a further plea of estoppel, which need not be considered here.

Defendants Welch and Godsil answered, setting up the defense that they were innocent purchasers, in good faith, of the promissory note in question, before maturity, and that they were still the owners of it, and asked a decree in their favor against the plaintiffs, Barber and Bidegary, on account of said promissory note, for the sum of $1,500, with interest, and attorney's fees.

These matters all having been put in issue by appropriate denials, the cause went to trial and there were findings in favor of defendant Jetmore in regard to the charge of fraudulent dealings between him and the plaintiff Barber, a finding that the defendants Welch and Godsil were innocent purchasers and were the owners of the promissory note, and a finding in favor of their having a decree against the plaintiffs for the same, and a decree following said findings; from which decree the plaintiffs appeal.

AFFIRMED.

For appellants there was a brief and oral argument by *Mr. O. M. Corkins.*

For respondents there was a brief over the name of *Messrs. McCamant & Thompson,* with an oral argument by *Mr. W. Lair Thompson.*

McBRIDE, C. J.—1, 2. We are not in the position of the learned circuit judge as to the advantage of having before us the actual witnesses and thus being able more accurately to appraise their testimony. We are of the opinion, however, that the charges of fraudulent conduct of the defendant Jetmore are not made out by a preponderance of the testimony. On the contrary, we think that the weight of evidence is that plaintiff Barber was actually guilty of the crime of assault with a dangerous weapon. After one mistrial it appears from the record that he entered a plea of guilty, upon which plea the court imposed a fine, which, with costs, amounted to over $600. It is not denied but that upon the trial and in all preliminary matters the defendant Jetmore rendered entirely satisfactory service. We think the testimony indicates that Barber was in a position where it was entirely probable that he might have been sent to the penitentiary for a term of years, and that when he came to consult Mr. Jetmore, at the instance of his own partner and personal friend, he was exceedingly apprehensive, as he had a right to be, of the ultimate legal consequences of his conduct, and that Mr. Jetmore made no attempt to frighten him into paying an exorbitant fee, but merely read to him the statute, and entered into a contract to conduct the case, through all its phases, for the sum of $5,000, and that the plaintiff Barber was perfectly willing at the time to pay the sum and agreed to do so.

While it appears that Barber was a foreigner and not well skilled in the English language, we think the fact that several letters in his handwriting have been introduced indicates that he had a passable knowledge of ordinary English and was able to understand his

situation as well as, and perhaps better than, the average, ordinary American shepherd. It appears from the testimony that he is a Spanish Basque, against whom, unfortunately, there seems to have been some prejudice in that community, and that the man whom he assaulted was a returned soldier, which is a class rather favored in that community, and in all other communities of the state. To say, under such circumstances, that his case was exceedingly critical, if it came to trial before a jury, would be only to assert a plain, obvious fact. He had a good reason for apprehension that he might be convicted and sent to the penitentiary, and that this did not happen may possibly be referred to the adroitness of his defense, concerning which we have no testimony. But the fact remains that by his own plea he was guilty, and the mildness of his sentence might be attributed to the disinclination of courts and district attorneys to go to the expense of long retrials. It will be remembered that the contract between Barber and Jetmore contemplated all possible exigencies of the case, which would have included trials in the Justice's Court, in the Circuit Court, possible retrials and possible appeals to the Supreme Court, and all the consequences which sometimes prolong a criminal case over months and perhaps years of litigation; and, while the fee charged seems large in view of the actual termination of the case, and might be considered a very large fee under any circumstances, we cannot, as a matter of law, hold that, in view of all possible contingencies as they appeared at the time, it was so exorbitant as to be unconscionable. At all events, we are satisfied that Barber made the contract as it was alleged by the defendant Jetmore, and with his eyes open, and

was not deceived by reason of his ignorance or by any misunderstanding of the circumstances.

3, 4. We are also satisfied that the purchase of the promissory note by the other two defendants was in good faith and for a valuable consideration. Some objection is made to the jurisdiction of the court to decree the payment of the note in this proceeding, but the defendants Welch and Godsil were brought into the case at the instigation of the plaintiffs, and set up their rights in the matter and asked for a decree in their favor, to which no objection was made by motion, demurrer, or otherwise. The general rule is that equity, having obtained jurisdiction for one purpose, will proceed to final determination of the matter, without relegating the parties again to the law courts and requiring the merits to be relitigated. We think the court had jurisdiction and acted properly in this case in entering a decree against plaintiffs for the amount of the promissory note.

The testimony in this case is conflicting in some respects, and we have stated our conclusions upon it in preference to going into tedious detail, which would be of no interest to any one except the parties.

After a careful examination of the whole case we are of the opinion that the findings and decree of the Circuit Court were in accordance with the clear weight of the testimony. The decree of the lower court will accordingly be affirmed.        AFFIRMED.

BEAN, RAND and COSHOW, JJ., concur.