Argued March 20, affirmed April 23, rehearing denied May 28, motion to correct cost bill denied July 2, 1929.

# SAMUEL J. GRANT *v.* WILLIAM H. HALLAM.

(276 Pac. 687.)

For appellant there was a brief and oral argument by *Mr. William H. Hallam, pro se.*

For respondent there was a brief and oral argument by *Mr. Ashby C. Dickson.*

McBRIDE, J.—█ The complaint, while very inartificially drawn, states a cause of action. It was perhaps vulnerable to a motion to make more definite and certain, but if defendant, by working upon plaintiff's fears or otherwise, induced him to give him $2,000, with the understanding that from that sum he was to use a portion of it to post such cash bail as might be required, pay any fine that might be assessed, and retain a reasonable attorney's fee, and pay the remainder back to plaintiff, he should be held to that agreement.

██ The first question therefore is, was there any evidence that such agreement was actually made, or necessarily implied, from the conversation between the parties. The Constitution does not permit us to weigh contradictory evidence, that being the exclusive function of the jury. There is no question that plaintiff employed defendant to conduct his defense, and, after much time spent in recital of preliminary matters, the question of the $2,000, which was turned over to defendant was reached, and, among other things plaintiff testified in respect to that transaction, and from excerpts quoted in respondent's brief, we extract the following:

"Q. Then from the police station where did you and Mr. Hallam go? A. Went across the Morrison Bridge over to the Citizens Bank.

"Q. Yes, and you went in there? A. Yes, and I drew $2,000.00 out of my savings account. In bills and the cashier laid them right there on the desk and Mr. Hallam took and picked them up and said, 'I will take charge of this' and I said, 'I guess the case won't amount to much.' I said, 'Suppose you will put up the bail and I suppose I will get back what is not used'—that was the conversation.

"Q. Was that money— A. (Interrupting.) He said something about 'I may not have to use it but you will get it back.'

"Q. Now when the teller counted out the $2,000.00 and laid it on the counter, who picked the money up? A. Hallam.

"Q. Who put up the money for the $250.00 bail? A. I put up the $250.00 by myself.

"Q. Out of this $2,000.00 you drew out of the bank? A. No.

"Q. Well, what was Mr. Hallam to do with the $2,000.00—what was your understanding, if any, that you were to do with this $2,000.00 when you drew it out of the bank? A. He said if it goes against you the bail will be increased and you had better get plenty of money; I will need some—I don't know exactly how much it was. * *

"Q. What was to be done with the $2,000.00? A. I put it up so in case we would have it for expenses of the trial; all expenses, not just one expense, but all.

"Q. Did Mr. Hallam tell you what the expenses of the trial would be? A. No.

"Q. Did he tell you it would consume $2,000.00 for the expenses of the trial? A. No, he never told me any sum.

"Q. If the money was not all consumed as expenses, then what understanding, if any, was had between you and Mr. Hallam as to what was to be done with the balance?

"Mr. Hallam: I object to that as leading.

"The Court: The objection is overruled; and exception allowed.

"A. It was to be returned to me. * *

"Q. Now at the time when you was tried and had a jury in the municipal court, who paid the jury fee? A. I did, I had the money.

"Q. It didn't come out of this $2,000.00? A. No. * *

"Q. Who paid the jury fee for the second trial? A. I put up the money once or twice; I don't remember which, it has been so long ago, but it all came out of my pocket whatever was paid.

"Q. What did the jury do then? A. They convicted me.

"Q. Then what happened? A. Well, when the—I forget the name of police judge down there—when he pronounced sentence he raised the bail and I put the money up out of my pocket.

"Q. How much bail was required of you then? A. $750.00.

"Q. In addition to the $250.00? A. Yes, sir, that made it $1,000.00. * *

"Q. Were you ever tried again? A. Yes, sir.

"Q. What was the outcome of that trial? A. Well, I was convicted; they upheld the sentence that had been given down at the police court.

"Q. How much of a fine was imposed on you? A. $500.00.

"Q. How was that fine paid? A. It was taken out of the bail money I had put up.

"Q. Any part of the $2,000.00 turned over to Hallam used in any of these court expenses? A. No.

"Q. Who paid the jury fee in the circuit court? A. I did."

On cross-examination, the witness apparently contradicted himself in several particulars; whether from confusion or otherwise it is not for us to say. From a consideration of his whole testimony, the impression left on the writer's mind is that he was neither a Solomon in wisdom nor a George Washing-

ton in truthfulness; but it was for the jury, and not this court, to pass on that question, and they believed him. In addition to this, the amount received was so largely out of proportion to the services likely to be rendered as to make it seem doubtful that plaintiff deliberately agreed to pay the defendant $2,000 for his defense in a case in the police court. It is true plaintiff was charged with committing a very filthy and detestable act, and, as the result shows, was justly so charged; but it ·was not a felony and reputable attorneys have fixed a reasonable fee. for such service at from $200 to $500. So taking the case as a whole, we are of the opinion that there was evidence to go to the jury supporting plaintiff's contention in this regard, and sufficient, *if believed,* to justify the verdict. To say the evidence is contradictory, is to put it mildly. If a verdict had been rendered for the defendant, this court would have been compelled to uphold it. The jury had a right to believe either party and chose to accept the version of the plaintiff.

The plaintiff's evidence as to what was said between defendant and himself when defendant took the $2,000 package is this:

"I drew $2,000 out of my savings account, * * in bills and the cashier laid them right there on the desk and Mr. Hallam took and picked them up and said, 'I will take charge of this,' and I said, 'I guess the case won't amount to much.' I said, 'I suppose you will put up the bail and I suppose I will get back what is not used.' That was the conversation. * * He said something about, 'I may not have to use it, but you will get it back.'"

Defendant's testimony as to what occurred at the bank is, that first the plaintiff drew out $250 and gave

it to defendant to be deposited as cash bail, which money he actually deposited in court for that purpose, taking a receipt which he kept for a long time. Relating further as to what occurred at the bank at the time plaintiff drew out and turned over to defendant the $250 bail money, defendant testified as follows:

"I said, 'I may need some money for my services.' He said, 'How much?' I said, 'Two thousand dollars.' He said, 'All right,' and my recollection was that he drew a check for me, anyway he drew a check for $2,000 over there and handed it to me himself. First, he drew out $250, and gave it to me and then he drew out $2,000 and gave it to me. I received $2,000. * * On the way back Grant said to me or made the remark, he said, 'That is a pretty good fee, but,' he says, 'it really didn't cost me anything because I made it speculating in stocks.' "

As to other details as to who had possession of the other $250, and as to who handed it over in deposit for bail, the parties flatly contradicted each other. There was other testimony, which, in some degree, tended to weaken the testimony of plaintiff, but the jury had it all and neither this court nor the Circuit Court, have any right to get into the jury-box and tell the jury which party they should believe.

■ The court very properly took the question of duress from the jury: Not only was there no evidence of duress or perturbation of mind on the part of the plaintiff, but his own evidence is to the effect that he remarked to his attorney, that he supposed the case wouldn't amount to much, which indicates that he was mentally too callous to realize the moral enormity of the offense with which he was charged.

There was just one proposition to try. If plaintiff's version of the transaction is true, or if the jury

believed it to be true, they should have found as they did, a verdict for the plaintiff. If the defendant's version was true, plaintiff was not entitled to a single dollar. Parties have a right to agree between themselves as to the amount of an attorney's fee, and whatever might be the opinion of the jury as to its excessiveness, the agreement ought to stand. Juries are not constituted guardians of parties *sui juris* to relieve them from the consequence of improvident contracts, and, in this respect, the charge of the court was unexceptionable, and, if no reversible error of law occurred on the trial, the judgment must be affirmed.

■ The first two assignments of error are predicated upon the alleged insufficiency of the complaint and have already been answered. Other errors are predicated upon alleged false statements of the testimony made by counsel in his closing argument. One in particular, to the effect that "defendant had taken all the money plaintiff had in the bank," and that after defendant had objected to said statement, plaintiff's counsel withdrew the same, but afterwards reiterated it in his closing address. We find a notation by the court, that whenever erroneous statements were made and objected to by counsel, the jury was directed to disregard them.

The trial judge exhibited no prejudice in his rulings in the case, and was in a position to be better able to judge the effect of the alleged erroneous statements of counsel than we are, and better able to judge as to what statements actually were made, as they are particularly a matter within his cognizance. We are disposed to respect his discretion in ruling upon this feature of the case.

As to other alleged misrepresentations, it is not shown that they were objected to on the trial, or, if objected to, it is shown the jury was instructed to disregard such misrepresentations. The jury is supposed to be composed of fairly intelligent citizens, whose sworn duty it is to weigh the evidence, and, if cases were to be reversed every time an attorney in the heat of argument went outside of the literal facts, the number of reversals would be materially increased. From the torrent of abuse of opposing counsel indulged in by the defendant in the brief, we may well suspect that counsel had some provocation for heated language when trying the case below.

■ The objection, that the complaint containing a charge of duress, which was wholly unproven, was allowed to go to the jury, is untenable. The law requires the pleading to go to the jury, and when the court instructed them that there was no evidence of duress and withdrew that feature of the case from their consideration, they did all that was in their power to do under the circumstances.

■ Another specification of error is based upon the refusal of the court to give the following instruction requested by the defendant:

"The supreme court of Oregon, in a case somewhat similar to this case at bar, held that $5,000.00 was not as a matter of law an excessive attorney fee for the defense of the party accused. That was the case of an attorney defending a man who was accused of a murderous assault on another man, and it is for the jury to consider and determine whether this case now at bar, of an alleged assault by a mature man on a young girl, justifies the same defensive attorney fees, or 40 per cent of the fee charged for the defense in case of an alleged murderous assault by one mature man on another mature man."

In some instances, the court may quote from other decisions upon the same subject, although, generally, it is a matter rather to be tolerated than approved.

In this instance, the case of *Barber et al.* v. *Jetmore et al.*, 111 Or. 545 (227 Pac. 523), which defendant requested the court to refer to was not "somewhat similar" to the case at bar. The circumstances were wholly different and there was little similarity, except that an attorney's fee was involved. The Supreme Court in that case held exactly as Judge HEWITT held here, that, if Barber, the plaintiff, had agreed to pay a fee of $5,000, to the defendant Jetmore to defend him through all courts upon a charge which he might, if convicted, be sentenced to the penitentiary for ten years, he must abide by his bargain, and they required him to do so refusing to hold that the fee agreed upon was unconscionable. To have said to a jury that the Barber case was somewhat similar to this, and to have invited them to make a comparison of the two cases would have been gross error.

■ In October, 1926, the plaintiff went away, as he says, for a trip, and during his absence, he wrote several letters of a more or less confidential character to the defendant, mostly advising him of his whereabouts and containing messages to members of his family, but making no reference to the case, or his relations with defendant, who was still acting as his attorney, and who thereafter conducted his defense in the Circuit Court. We fail to see how these letters can have any bearing on the case. They were written before the case finally terminated, and were just such letters as might be written by a client to his confidential attorney. Had they been written after the

termination of the case and after defendant had finally failed to devote any of the $2,000 to payment of the costs, fines and expenses, they might have had some slight materiality, but, under the circumstances, they were immaterial.

To sum up our conclusions, we find no mistake as to the law, and, while the case is a close one as to the facts, in fact, so close that, if we were trying them we might be inclined to differ from the conclusions arrived at by the jury. We find no authority to retry facts here, and are bound by the verdict, and so must affirm the judgment.

AFFIRMED. REHEARING DENIED. MOTION TO CORRECT COST BILL DENIED.

BEAN, RAND and ROSSMAN, JJ., concur.