505

Argued and submitted September 27, 2000, reversed and remanded for reconsideration December 26, 2001

In the Matter of the Compensation of
Terry W. Martin, Claimant.

Terry W. MARTIN,
*Petitioner,*

*v.*

CITY OF PORTLAND,
*Respondent.*

98-00466; A109341

37 P3d 209

Geoffrey G. Wren argued the cause and filed the brief for petitioner.

David L. Jorling, Senior Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* De Muniz, J., resigned.

## WOLLHEIM, J.

Claimant seeks judicial review of an order of the Workers' Compensation Board holding that he had not carried his burden of proving that his work was the major contributing cause of his respiratory conditions. We review for substantial evidence and errors of law. ORS 183.482(8). Because the Board erroneously held that claimant's evidence was insufficient under ORS 656.266 as a matter of law, we reverse and remand.

Claimant began working as a mechanic for the City of Portland (employer) in December 1993. Before starting that job, claimant had a history of childhood asthma. Besides a respiratory problem in the late 1970s that was apparently caused by chemical exposure, claimant's respiratory health as an adult had been good until he began experiencing the respiratory conditions giving rise to this claim.

From 1993 to 1997 claimant worked the night shift as a mechanic at employer's shop, doing maintenance and repair work on heavy equipment and vehicles. Workers at the shop were exposed to a variety of respiratory irritants, including exhaust fumes, dirt, dust, and various chemical compounds. Claimant and several coworkers testified that on a daily basis they saw dirty trucks come into the shop and fumes hanging in the air. At the end of shifts, claimant and his coworkers would often blow dark-colored mucous out of their noses. Claimant's coworkers also said they saw claimant on several occasions suffering from red, swollen, and watering eyes. One coworker, Arthur, stated that after one such occasion he made a point to visit claimant on the following days out of concern for claimant's health. Arthur next saw claimant at the beginning of claimant's work shift. When asked how he was feeling, claimant responded that he was not feeling too bad. When Arthur checked on claimant one hour later, claimant had red, puffy eyes and was sweating profusely.

In March 1994 and in April and May 1996, claimant sought medical services for nasal congestion and respiratory

infection, respectively. In December 1996, claimant's respiratory conditions began to worsen, and in March 1997, claimant again sought medical attention after experiencing three months of nasal discharge and coughing. Between March and August, claimant saw various doctors and had occasional improvement in his conditions, but they always returned. On August 11, 1997, one of claimant's doctors, Dr. Chang, authorized claimant to take some time off work for "sinus infection, asthma." Chang also started claimant on a steroid treatment.

Near the end of August, claimant returned to work. Subsequently, on August 27, 1997, Dr. Fuchs examined claimant. Claimant told Fuchs that in the two weeks he had been off work his conditions had markedly improved. However, claimant felt that symptoms were beginning to recur with his return to work, which also coincided with reduction in the steroid treatment. Fuchs opined that claimant's work exposure was very likely exacerbating both his preexisting asthma and his nasal discharge. Fuchs recommended claimant change to a fume and dust-free working environment. On the same day, claimant was examined by another doctor who came to similar conclusions. Claimant filed his workers' compensation claim the following day.

Thereafter, claimant continued to receive treatment for his respiratory conditions. In October 1997, claimant was evaluated by Dr. Browning and, at the request of employer, Dr. Montanero. Montanero concluded, and Browning concurred, that claimant had preexisting asthma that was symptomatically aggravated, but not pathologically worsened, by work exposure to fumes and dust. Thereafter, employer denied the claim.

After a hearing, the administrative law judge (ALJ) upheld employer's denial. In reaching that conclusion, the ALJ evaluated the testimony of claimant and his coworkers:

"The testimony of claimant and his coworkers is * * * entirely subjective and based on an unquantified personal evaluation of relative personal sensitivity to the notions of 'dusty' and 'dirty.' There is no objective and persuasive evidence upon which to make a meaningful determination as

to the relative 'dustiness' or 'dirtiness' of the workplace as if it were anything other than a subjective experience.

"Having the extended testimony of three of the doctors to rely on, I learned through their testimony that the evaluation of the dirtiness of the workplace is of relatively little medical consequence. The issue is more of claimant's sensitivity to certain irritant factors which may, or may not, be present in the workplace environment."

The ALJ then summarized the doctors' testimony and concluded:

"Having reviewed all of the medical reports and testimony, I am left with the impression that it is possible that the workplace exposures are the major contributing cause of claimant's condition based on his response to withdrawal from the workplace, as Dr. Fuchs explains. However, that leaves me with the analysis that no one has been able to identify any other cause so it must be work related. That analysis is prohibited by ORS 656.266. Consequently, even though there is often a temporal connection between claimant's symptoms and his days, or nights, closed up in the employer's shop, that connection is not sufficiently strong medically that the employer should be required to pay workers' compensation for the rhinitis and sinusitis conditions."

The Board affirmed and adopted the ALJ's order.

On judicial review, claimant challenges the Board's decision on two grounds. In his first assignment of error, claimant argues that the Board committed legal error by rejecting the testimony of claimant and his coworkers regarding workplace cleanliness. According to claimant, the statement that "[t]here is no objective and persuasive evidence upon which to make a meaningful determination as to the relative 'dustiness' or 'dirtiness' of the workplace as if it were anything other than a subjective experience" indicates that the Board erroneously believed that subjective evidence could never be used to demonstrate workplace conditions. Employer concedes that the Workers' Compensation Act does not require objective evidence of workplace exposures, but argues that the Board's decision was not based on any legal distinction between subjective and objective evidence, but

instead simply on the persuasiveness of the evidence offered by claimant in this case.

◼    Employer is correct. The Board did not require objective evidence of workplace cleanliness or of specific irritants. Rather, we read the Board's statements to mean that objective evidence of workplace cleanliness or of specific irritants would have been more persuasive in demonstrating that claimant's work was the major contributing cause of his conditions. Thus, the essence of the Board's decision was not that claimant had failed to present objective evidence of workplace conditions and could not prevail as a matter of law, but that the Board was not persuaded by claimant's evidence. It is the factfinder's job to weigh the various pieces of evidence and testimony presented, and the Board's rejection of claimant's argument on the ground that the proffered evidence was not persuasive does not constitute an error of law. Accordingly, we reject claimant's first assignment of error.

◼    Claimant's next assignment of error is essentially that the Board misapplied ORS 656.266. That statute provides:

> "The burden of proving that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker. The worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred."

Thus, under ORS 656.266, it is claimant's burden to prove the compensability of his occupational disease claim. If the credible evidence in the record only disproves the existence of other potential causes, ORS 656.266 precludes the Board, as a matter of law, from holding a claim compensable. If, however, the record contains credible evidence of the causal link between claimant's occupational disease and work exposure, the Board must evaluate the persuasiveness of all of the relevant evidence in the record to determine whether claimant has satisfied his burden of proof. *Bronco Cleaners v. Velazquez*, 141 Or App 295, 297, 917 P2d 539 (1996).

◼    *Bronco Cleaners* is illustrative. There, the Board held that the claimant's skin condition was compensable because

the Board found persuasive the temporal connection between the claimant's work and her skin condition, as well as elimination of other possible causes. *Id.* On review, the employer argued that the Board's decision was "contrary to ORS 656.266 because it relied solely on a 'natural inference' drawn from the temporal relationship between claimant's condition and her employment to support its conclusion that the work exposure was the major contributing cause of claimant's condition." *Id.* In affirming the Board's decision, we explained that ORS 656.266 "precludes a worker from proving compensability *solely* by disproving other possible explanations of how the injury or disease occurred," and that some additional, affirmative evidence that the condition is work related is required. *Id.* at 298 (emphasis added). In particular, we stated:

> "[I]f claimant had merely demonstrated that before she worked for employer, she did not have dermatitis, and now she does, her proof would be legally insufficient under the statute. However, claimant's evidence goes beyond that chronological connection. The evidence demonstrates a pattern of diminishment and enhancement of the condition that correlates to the existence of or lack of exposure to the work place. In that light, claimant's proof exceeds what the statute deems insufficient even though [the doctor] applied a methodology of exclusionary diagnosis." *Id.* at 299.

Thus, as applied in *Bronco Cleaners*, ORS 656.266 provides that a claimant cannot make a *prima facie* showing of compensability merely by offering evidence of a chronological relationship between the commencement of his or her employment and claimed injury and then ruling out other causes. While such evidence can be part of the requisite proof, it is incumbent upon the claimant to offer additional evidence of the relationship between the employment and the claimed condition. One example of such additional evidence, and the one identified by the court in *Bronco Cleaners*, is evidence showing a "pattern of diminishment and enhancement of the condition that correlates to the existence of or lack of exposure to the work place." *Id.*

■    Relying on *Bronco Cleaners*, claimant argues that the Board erred in concluding that,

"it is possible that the workplace exposures are the major contributing cause of claimant's condition based on his response to withdrawal from the workplace, as Dr. Fuchs explains. However, that leaves me with the legal analysis that no one has been able to identify any other cause so it must be work related. That analysis is prohibited by ORS 656.266."

That discussion, according to claimant, indicates that the Board erroneously believed that ORS 656.266 precluded it from considering a "pattern of diminishment and enhancement of the condition" correlating with the existence or lack of workplace exposure as establishing compensability. *See id.* at 299. Thus, according to claimant, the Board never considered whether all of the evidence in the record was *persuasive* as to compensability, because the Board believed that it was precluded, as a matter of law, from making such an inquiry. We agree.

There is no dispute—indeed, employer concedes—that there is evidence in the record supporting claimant's theory that his work exposure caused his respiratory conditions. In addition, the Board's comment that it is "possible that the workplace exposures are the major contributing cause of claimant's condition based on his response to withdrawal from the workplace, as Dr. Fuchs explains" suggests that the Board deemed that evidence credible. Notwithstanding that evidence, however, the Board denied compensability as a matter of law, holding that because "no one has been able to identify any other cause so it must be work related. That analysis is prohibited by ORS 656.266." Thus, the Board, by misinterpreting ORS 656.266 and erroneously concluding that it could not find claimant's condition compensable as a matter of law, never addressed whether all of the evidence in the record—including evidence of a "pattern of diminishment and enhancement" of claimant's condition in response to work exposure and evidence excluding other possible causes—persuasively established that claimant's workplace was the major contributing cause of his conditions.

We cannot review the record for substantial evidence when the Board's order is predicated on a misinterpretation of the law. ORS 183.482(8)(a). Consequently, a remand is required for the Board to consider whether claimant has

established that the workplace exposure was the major contributing cause of his occupational disease condition.

Reversed and remanded for reconsideration.