Argued and submitted May 18; vacated and remanded for reconsideration of net costs paid toward husband's home and award of net costs to wife, otherwise affirmed November 30, 2016

In the Matter of the Marriage of

Todd S. KOTLER,
*Petitioner-Respondent,*
*and*

Gina L. WINNETT,
*Respondent-Appellant.*

Jackson County Circuit Court
093924D2; A154860

385 P3d 1200

Steve C. Baldwin argued the cause and filed the briefs for appellant.

Kimberly S.T. Bolen argued the cause for respondent. With her on the brief was Fowler & McNair, LLP.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## DEHOOG, J.

Husband and wife entered into a premarital agreement (PMA) that, among other things, provided for the disposition of the parties' separately acquired homes and any contributions made to husband's retirement accounts during the parties' marriage. Following dissolution proceedings, the trial court determined that the PMA was enforceable and distributed the parties' property in accordance with its terms. In relevant part, the court attributed to each party costs incurred during the marriage in connection with that party's separate home and awarded to husband an investment account that, according to husband, held only his premarital retirement balance and the earnings it had accrued. On appeal from the resulting judgment of dissolution, wife raises two assignments of error. First, wife argues that the trial court miscalculated the marital expenditures made toward husband's separate home, because the court failed to consider the costs of improvements made to that home. Second, wife argues that the court erred in awarding the investment account to husband as his separate, premarital property and contends that the account was subject to equitable distribution. For the reasons discussed below, we conclude that there is evidence in the record to support the trial court's finding that the investment account was husband's separate property. However, with regard to the expenditures made toward husband's separate home, we are unable to discern whether the court found wife's evidence unpersuasive or, instead, it overlooked wife's evidence of those costs entirely. A remand will allow the trial court to clarify its ruling and amend it if necessary. Accordingly, we vacate and remand for reconsideration of the net costs paid toward husband's home and the award of net costs to wife but otherwise affirm.[1]

To provide context for the parties' arguments on appeal, we begin by reviewing the relevant procedural history of this case and the factual underpinnings of the parties' dispute. As a preliminary matter, we note that wife's

---

[1] We have awarded costs to abide the outcome on remand. *See* ORAP 13.05. To the extent that attorney fees are sought in this case, the petition should be filed pursuant to ORAP 13.10. *See* ORAP 13.10(3).

assignments of error relate primarily to factual findings made by the trial court and that wife seeks *de novo* review of those findings pursuant to ORS 19.415(3)(b). However, we do not agree that this is an exceptional case, and therefore decline to exercise our discretion to undertake *de novo* review. *See* ORAP 5.40(8)(c) (we exercise our discretion to review *de novo* only in "exceptional cases"). Thus, "we view the facts consistently with the trial court's express and implied findings, as supplemented by uncontroverted information from the record." *Code and Code*, 280 Or App 266, 267, 380 P3d 1073 (2016). We state the facts with that standard in mind.

Husband and wife married in September 2005 and, in August 2009, husband filed for divorce. In the ensuing trial, held in September 2012, the parties initially agreed that a valid premarital agreement controlled the disposition of their marital property.[2] In relevant part, the PMA provided the following terms: Property acquired by the parties during their marriage with "joint or marital" funds ("marital income") would be deemed "joint or community" property ("marital assets").[3] In the event of divorce, the parties were to equally divide the marital assets. Further, the parties were each to retain exclusive ownership of certain property that they had owned before getting married, and that "sole and separate" property would not be subject to equal division upon divorce.

The PMA specifically designated husband's residence in Medford, Oregon, as a premarital asset that was to remain his separate property. The PMA further provided that, during the course of the marriage, the parties

---

[2] Premarital agreements are subject to the provisions of the Uniform Premarital Agreement Act, ORS 108.700 to 108.740. Under ORS 108.710, parties may enter into a premarital agreement with respect to most matters to be resolved in the event of dissolution, including the division of property. When parties enter into a premarital agreement that is binding and enforceable, the construction of that agreement is governed by contract law. *See Taylor and Taylor*, 193 Or App 694, 696, 92 P3d 124 (2004).

[3] We understand the parties' use of the phrase "joint or marital funds" to refer to the earnings or other income of either party during the course of the marriage, and the phrase "joint or community property" to refer to the marital assets. For ease of reference, we discuss those two forms of marital property as "marital income" and "marital assets" respectively. *See generally Kunze and Kunze*, 337 Or 122, 133-34, 92 P3d 100 (2004).

would pay for the "net cost of mortgage, maintenance, property taxes, insurance, improvements and other expenses" incurred in connection with that house with marital assets, and that, upon a divorce, husband was to retain his residence and "reimburse[]" wife for "half the net costs paid [toward that home] from the marital account."[4]

The PMA also designated husband's retirement accounts at the time of marriage as premarital assets. As relevant to this appeal, the agreement specifically designated husband's existing retirement account ("account -xx96"), together with any "growth or loss," as husband's separate property. Although the PMA recognized that husband's existing premarital retirement accounts could grow or decline during the course of the marriage, any retirement benefits newly earned during the marriage would be considered marital assets. To account for such marital contributions, the PMA provided that, "[o]n marriage, it is [husband's] responsibility to * * * open a new retirement account for post marital pension contributions, which will be considered joint property. * * * All of [husband's] new pension contributions go into the new pension account(s) after marriage."

Consistent with the PMA, husband and wife used marital income to pay the mortgage and other costs associated with the Medford home during their marriage. However, in regard to the parties' retirement income, husband did not, upon marriage, open a new retirement account in which to deposit any post-marital pension contributions, as anticipated by the PMA. Instead, husband "procrastinat[ed]" and did not open a new marital retirement account until November 2007, more than two years after the parties had married.

At trial, the parties did not initially dispute that their property should be distributed in accordance with the above terms of the PMA. However, as discussed below, they gave inconsistent accounts as to what constituted "costs" paid toward the Medford residence and the amount of those costs. The parties also disputed whether funds held by husband in a newer investment account ("account -xx30") corresponded

---

[4] The PMA did not further define "net costs."

to the balance husband had held in account -xx96 before the parties were married, such that the balance of the newer account, -xx30, was husband's separate property.

The parties tried those and other disputes to the trial court over the course of three days. As noted, the parties did not dispute that the PMA entitled wife to reimbursement for half of the costs paid toward the Medford residence during their marriage. In support of his calculation of some or all of those expenditures, husband submitted, without objection or questioning by wife's attorney, an exhibit indicating that the parties had spent $153,005.38 on mortgage and tax payments for the home. Husband's exhibit did not reference any costs for improvements made to the Medford residence. Wife, in turn, submitted her own exhibit showing mortgage and tax payments, but her exhibit also showed home-improvement costs incurred in 2007, 2008, and 2009, totaling $39,414.00.[5] Other than listing separate home-improvement totals for each of those years, wife's exhibit provided no further detail regarding those expenditures, such as what improvements were made or how much was spent on individual improvements. Wife also did not expressly produce any separate evidence related to those expenses at trial.

At trial, the parties addressed various items of personal property that they had acquired and placed in the Medford home during the course of their marriage. Among those items were custom window treatments, custom interior lighting, and custom exterior lighting. Wife initially valued the window treatments at $5,000.00. Husband did not place an initial value on the window treatments, because they were "part of the [Medford] house," but, ultimately, estimated that they had cost $1,500.00. Rather than resolve that dispute, the trial court asked the parties to estimate the present resale value. Husband estimated a resale value

---

[5] Wife's overall total included five months of mortgage payments not included in husband's figure. Wife's figure also included costs for insurance, housekeeping, and yard upkeep not included in husband's figure. In total, wife's figure indicated that the parties had spent $234,606.18 on the Medford residence during their marriage. However, wife does not seek reimbursement for insurance, lawn maintenance, housecleaning, or the additional mortgage payments on appeal, because her attorney did not alert the trial court that those items were not included in the court's award.

of $300.00, and wife agreed. The court employed the same method to value the interior and exterior lighting, ultimately assigning values of $300.00 and $150.00 respectively, with the parties' approval.[6]

With regard to the retirement funds, husband acknowledged at trial that he had breached the PMA by failing to open a new retirement account when the couple were married in 2005. Husband maintained, however, that he had successfully segregated his premarital retirement balance— together with its associated growth—from the parties' marital retirement earnings when he opened a marital account in 2007 ("account -xx79"). Husband explained that, at that time, he had opened two new retirement accounts—account -xx30 and account -xx79—and that he had transferred the entire balance of his premarital account (account -xx96) to account -xx30. Husband testified that, to the extent that any marital retirement earnings had been commingled with his premarital savings, he was able to determine what part of the new account encompassed marital contributions and their associated growth, and what part comprised husband's premarital balance and its associated growth.[7] According to husband, he had transferred the resulting marital share from account -xx30 to account -xx79. Thus, husband contended, the funds remaining in account -xx30 represented only his premarital retirement balance and its associated growth. Husband also testified that, when he opened the new retirement accounts in 2007, he had explained his calculations to wife, and she had consented to his handling of the accounts.

Wife disputed husband's contention that he had been able to fully segregate the parties' marital and premarital retirement assets and argued that, due to that fact and due to husband's breach of the PMA, the funds in account -xx30 should be subject to equitable distribution.

---

[6] Specifically, with regard to the interior lighting and window treatments, the court asked the parties what value that property would have if it were presently sold. Neither party objected to that method of calculating the value of those items.

[7] Husband appears to have testified inconsistently that while, on the one hand, he had not deposited any of the parties' marital retirement income into his premarital account, he had, on the other hand, accounted for having made such deposits when he opened the new accounts in 2007. The significance, if any, of such apparent discrepancies is discussed below.

In support of that argument, wife called a forensic accountant, Kramer, who noted various discrepancies between husband's documentation and his testimony.[8] Kramer also opined that husband could not "unring the bell" and accurately segregate the premarital and marital retirement balances once they had been commingled. Based on his review of husband's finances, Kramer concluded that the funds in account -xx30 were not wholly premarital assets as husband had claimed, but were, instead, marital funds subject to equitable distribution.[9]

After taking the matter under advisement, the trial court issued a letter opinion in which it determined that the PMA was valid, enforceable, and controlled the division of the parties' property. In relevant part, the court awarded the Medford residence to husband as his separate property in accordance with the PMA, found that the parties had spent $153,005.38 on that residence during their marriage, and awarded that amount to husband as a marital asset subject to equal division.[10] The court also awarded husband the custom window treatments, custom interior light fixtures, and custom exterior light fixtures, assigning them a combined value of $750.00. Finally, the trial court awarded account -xx30—the account that husband had described as holding only his premarital retirement balance and its associated earnings—to husband as a premarital asset "not subject to equal division."

Wife submitted a request for clarification in response to the trial court's letter opinion. In that request, wife challenged the court's implicit finding that the parties had spent only $153,005.38 on the Medford residence and

---

[8] For example, husband's exhibits indicated that he had drawn certain checks from account -xx96 (*i.e.*, the ostensibly commingled account), but husband testified that he had drawn those funds from account -xx30.

[9] On cross-examination, Kramer acknowledged that his assessment was based largely on spreadsheets prepared by wife and depicting husband's retirement account activity. Kramer noted, however, that he had periodically cross-checked wife's spreadsheets against husband's account statements.

Separately, we note that husband did not object to Kramer rendering an opinion as to what legal conclusion the trial court should draw.

[10] The trial court's letter opinion, which the court attached to the general judgment, contains the following line item: "Costs paid for Medford residence during marriage: $153,005.38."

argued that she had presented "uncontroverted evidence that the parties incurred the costs of home improvements" for that residence totaling $39,414.00. Wife noted at the resulting hearing that those costs were not included in the $153,005.38 figure that husband had submitted, and that the trial court had not otherwise accounted for them. In his written response, husband argued that both parties had submitted exhibits regarding costs and that "[t]he Court exercised its discretion in ruling on the matter, and in doing so rejected [wife's] proposed numbers. * * * [That] does not mean that the Court then made a mistake." At the subsequent hearing, the trial court indicated that it had considered all of the cost information that the parties had provided. However, in response to wife's argument that the court had not accounted for the $39,414.00 in improvement costs associated with the Medford home, the court responded, somewhat incongruently, that it had considered "all the costs," and that its award went "beyond just improvements" and included "the cost of improvements paid." The court did not, however, explain how its award of $153,005.38— corresponding as it did to husband's exhibit depicting only mortgage and tax expenditures—reflected its consideration of *improvement* costs, much less how the court's award went *beyond* those costs.

The trial court entered a judgment dissolving husband and wife's marriage and, in relevant part, distributing their property in accordance with the court's letter opinion. Again, wife's assignments of error on appeal are that the court erred (1) in determining the costs paid toward the Medford residence during the course of the marriage and (2) in awarding account -xx30 to husband as his separate property, not subject to equitable distribution.

We start with wife's assertion that the trial court erred in determining the costs that the parties incurred in connection with the Medford residence. As indicated above, the court's only express reference to those costs was a line item in its letter opinion stating that the "[c]osts paid for [the] Medford residence during [the parties'] marriage" totaled $153,005.38. Because the trial court determined that the PMA was enforceable and attributed that sum to husband under the PMA's provision for "costs"—defined in

the PMA as including the mortgage, maintenance, property taxes, insurance, improvements, and other expenses—we conclude that the trial court implicitly found that the "costs" spent on husband's house totaled $153,005.38, *and no more*.[11] Our task on appeal is to determine whether there was evidentiary support for the court's implicit finding that the parties had not made any expenditures on the Medford home beyond those that husband attributed to mortgage and tax payments.

Wife's argument on that point is that, because $153,005.38 was husband's figure for mortgage and tax payments alone and did not include home-improvement costs, the trial court's apparent determination—that the mortgage and tax payments were the *only* costs—lacked evidentiary support. According to wife, *her* evidence showed that the parties incurred expenses for home improvements. Thus, wife reasons, by entering an award that did not include those improvements, the court erroneously relied on a finding that the record did not support.

Husband's response is, in essence, that it is immaterial that wife produced evidence that contradicted his, because it was well within the trial court's "discretion" to discount her evidence and credit his. In support of his argument that the court appropriately weighed the parties' evidence before reaching a decision, husband notes that wife's lump-sum calculations lacked detail and documentary support. Husband alternatively suggests that, rather than finding that the parties did not incur any costs for improvements, the court implicitly found that those costs came to $750.00, the total resale value that the court assigned the custom window treatments, exterior lighting, and interior lighting that it awarded husband. We reject those arguments in support of the trial court's ruling but, as we will explain, not entirely for the reasons wife would have us reject them.

We acknowledge that the trial court, as trier of fact, was entitled to accept husband's evidence regarding the costs

---

[11] Below we discuss—and ultimately reject—husband's contention that the trial court's award of the custom window treatments and light fixtures purchased for the Medford residence indicated an implicit finding that the resale values of those items were improvement costs incurred in connection with husband's home.

paid and reject wife's contrary evidence. *See Martin v. City of Portland*, 178 Or App 505, 510, 37 P3d 209 (2001) (factfinder may weigh evidence and reject evidence as unpersuasive). Indeed, it was the court's obligation to weigh the evidence and to determine whose evidence it found more persuasive. *See Taal v. Union Pacific Railroad Co.*, 106 Or App 488, 494, 809 P2d 104 (1991) (factfinder must resolve issues of credibility and contradictory evidence). Here, however, we cannot determine whether the court weighed what it viewed as competing evidence or, instead, overlooked wife's evidence entirely.

Our uncertainty arises from the hearing on wife's request for clarification. At that hearing, wife's attorney began to explain that, while the court's letter opinion had accounted for some of the costs attributable to the Medford house, the court's rulings had not addressed the additional $39,414.00 that the couple had paid for improvements over the course of their marriage. Husband's attorney acknowledged that home improvements were considered "part of those" costs, but suggested that the trial court, in the "exercise [of] its discretion," had decided not to accept wife's exhibit setting forth improvement costs.

Were that all that had occurred at the hearing, husband's argument that the trial court simply found wife's evidence unpersuasive might carry more weight.[12] *See Martin*, 178 Or App at 510 (factfinder may reject evidence it determines is unpersuasive). But that is not all that occurred. In response to counsel's comments, the court maintained that it *had* "considered *** the cost of improvements paid" and, in fact, that its award of costs had gone "beyond just improvements." Thus, not only did the trial court's comments arguably belie husband's theory—that the court had rejected wife's evidence of costs—those comments appear to convey the court's belief that the sum of $153,005.38 encompassed those costs, even though it is undisputed that husband's figure included only mortgage and tax payments and did *not*

---

[12] We note, however, that husband's "exercise-of-discretion" argument arguably mischaracterizes the trial court's factfinding function and, potentially, our standard of review. As discussed above, on non-*de novo* review, our role in regard to the facts is to determine whether the trial court's findings have evidentiary support—we do not consider whether the trial court's factual findings evince a sound exercise of discretion.

include improvement costs. We are at a loss to understand how an award that indisputably comprises only mortgage and tax payments can be an award that reflects the trial court's consideration of other costs and goes "beyond" those costs, especially given that the only evidence of what those other costs were was wife's unchallenged figure of $39,414.00.

To be clear, the issue at hand is not whether there is evidence in the record to support the trial court's express finding that the parties incurred $153,005.38 in costs toward the Medford house. If that were the only issue, we would be compelled to reject wife's challenge because husband's exhibit supports that finding. *See Fine and Fine*, 272 Or App 307, 308, 355 P3d 198 (2015) (we "are bound by the trial court's findings of historical fact that are supported by any evidence in the record" (internal quotation marks omitted)). Here, however, the issue wife raises is whether there is evidence to support the court's apparent finding that *all such costs* totaled $153,005.38—a finding that the court made in direct response to wife's assertion that the court had *not* considered all of the costs in reaching the $153,005.38 figure.

Given the trial court's ruling, coupled with its puzzling explanation of how it calculated its award, we are unable to answer that question on the record before us. That is because the court may either have ultimately found wife's evidence of costs unpersuasive—in which case its award of no more than $153,005.38 would be supported by the remaining record—or, as its comments to counsel seem to suggest, the court may instead have simply overlooked those costs despite its conviction that it had considered them. Under those circumstances, we deem it appropriate to remand the case for further proceedings so that the trial court may either consider wife's evidence of costs paid for improvements or clarify that it did consider that evidence, but rejected it as unpersuasive.[13] *Cf. Rennick v. Jackson &*

---

[13] We reject the third possibility posited by husband that, by awarding husband the window treatments and lighting purchased for the Medford home, the trial court separately accounted for home-improvement costs. While we recognize the possibility that the court had those items in mind when it recalled considering costs, the award of the resale value of those items—rather than the cost of acquiring and installing them—is wholly inconsistent with an award of their "costs."

*Coker*, 95 Or App 72, 74, 767 P2d 478 (1989) (remanding for further proceedings where it was unclear whether trial court had erroneously granted a motion as a matter of law or whether "sitting as factfinder, it was simply unpersuaded by the evidence").

Having disposed of wife's first assignment of error, we next consider wife's argument that the trial court erred in awarding husband the funds held in account -xx30 as his separate, premarital property, rather than treating that account as a marital asset subject to equitable distribution.

Wife does not dispute that, under the PMA, husband was to retain separate and exclusive ownership of his premarital retirement accounts, as well as any corresponding growth.[14] Rather, wife contends that there is no evidence to support the trial court's finding that account -xx30 held only premarital assets, rather than commingled funds that, in wife's view, should be subject to equitable distribution. Wife concludes that the court's finding lacked evidentiary support, because (1) the court did not make explicit findings of fact; (2) wife's expert, without expert rebuttal, testified that husband had commingled premarital and marital assets and could not disentangle them; and (3) husband's testimony regarding his efforts to separate premarital and marital assets was inconsistent and conflicted with his documentary evidence.

Husband's response is that wife's arguments all go to the weight of the evidence, not its legal sufficiency. In husband's view, the trial court was permitted to accept his explanation of how he had segregated funds despite any inconsistencies or conflicts in the evidence, and the court was under no obligation to accept the testimony of wife's expert, whether or not it was rebutted by another expert.

---

[14] We also note that there is no apparent dispute that, if the balance of husband's retirement account is properly deemed to be a premarital asset, husband would also retain exclusive ownership of any separately held assets acquired with, or fairly traceable to, funds from that account. *See generally Lind and Lind*, 207 Or App 56, 66-67, 139 P3d 1032 (2006) (citing *Kunze*, 337 Or at 145 (when "disputed * * * property is purchased during marriage with proceeds from one party's separately held asset, that party rebuts the presumption of equal contribution as to that portion of the property's value traceable to those proceeds")).

For the reasons that follow, we agree with husband that the record supports the trial court's finding.

First, we reject wife's contention that the trial court was required to make express findings of fact. We *assume* that the trial court found the facts in a manner consistent with its ultimate conclusion. *See Munson v. Valley Energy Investment Fund*, 264 Or App 679, 701, 333 P3d 1102 (2014) ("[W]here the trial court failed to make express factual findings, we assume that the court found the relevant facts in a manner consistent with its ultimate ruling."); *Matchey v. Staffing Network Holdings, Inc.*, 195 Or App 576, 580, 98 P3d 1174 (2004), *rev den*, 338 Or 124 (2005) ("[T]he trial court did not explicitly make findings of fact about the events that transpired. Nevertheless, we are required to assume that the trial court made factual findings that were consistent with its ultimate decision."). If there is evidence in the record to support the court's implicit findings, the absence of explicit findings of fact is irrelevant.

Furthermore, the trial court, in its role as fact-finder, was permitted to resolve any confusion or conflict it may have perceived in husband's testimony. *See Grant v. Hallam*, 129 Or 321, 327-28, 276 P 687, *rev den*, 129 Or 321, *cert den*, 280 US 522 (1929) (noting that, even though "the witness apparently contradicted himself in several particulars[,] whether from confusion or otherwise," the factfinder was still entitled to rely on his testimony); *see also Fostveit v. Poplin*, 255 Or App 751, 760, 301 P3d 915 (2013) (the trial court is entitled to weigh contradictory evidence). We will not disturb the trial court's resolution of such conflicts, so long as the facts, viewed consistently with the trial court's express and implied findings, support those findings. *See Hall v. Gordon*, 284 Or 49, 51, 584 P2d 1374 (1978) (rejecting argument that testimony was entitled to little weight, because review on appeal is limited to whether "the trial judge's decision was supported by any competent substantial evidence and in such review we do not pass upon the credibility of the witnesses, or weigh the evidence"); *Pitts v. Crane*, 114 Or 593, 600, 236 P 475 (1925) (appellate courts are precluded from considering the weight of contradictory evidence; where record contained contradictory testimony, court could not say there was no evidence to support a

finding one way or the other). Here, husband testified that, to the extent that the marital and premarital assets had become commingled, he was able to segregate the two; the trial court was permitted to accept that testimony.

Similarly, the trial court was permitted to accept husband's testimony even though the testimony of wife's expert, Kramer, conflicted with it, and husband did not call his own expert to rebut Kramer. As husband correctly observes, Kramer's testimony was not entitled to greater weight simply because Kramer is an expert; as with all conflicting evidence, the probative value of such evidence is solely for the trial court to determine. *See Friends of Parrett Mountain v. Northwest Natural*, 336 Or 93, 105, 79 P3d 869 (2003) ("[T]he probative weight to be accorded the testimony of expert witnesses is for the trier of fact to apportion."); *Highway Commission v. Beach*, 244 Or 162, 164, 416 P2d 316 (1966) ("Expert testimony is to be treated in the same manner as any other testimony by the triers of the facts; it is subjected to the same tests as to weight and probative value as non-expert testimony."). That is true even when, as in this case, the expert's testimony goes uncontradicted. *State v. Clark*, 286 Or 33, 40, 593 P2d 123 (1979) (the trier of fact "is not bound by the testimony of an expert witness even [when] it [is] uncontradicted," and the trier of fact alone determines the probative weight to be accorded to that testimony).

Viewed in the proper light, we conclude that the record supports the trial court's implicit finding that husband successfully segregated his premarital retirement savings and associated growth from the parties' marital retirement earnings, such that account -xx30 held only husband's separate property. Furthermore, given that conclusion, it is unnecessary to consider wife's additional argument that the court was required to equitably distribute the balance of that account. That is because the premise of wife's argument is that, by breaching the PMA, husband had irreparably commingled the parties' premarital and marital retirement accounts. In light of the trial court's implicit finding that the two had *not* been irreparably commingled, there was no need for the court to remedy husband's breach by distributing the account equitably between the parties. Accordingly, we reject wife's second assignment of error.

In sum, we conclude that there is evidence in the record to support the trial court's finding that the challenged retirement account held only husband's premarital assets and that the court did not err by not equitably distributing that fund. However, with regard to the costs spent on the Medford home, we cannot determine, based on the record before us, whether the trial court's finding is supported by any evidence, because the basis for the court's finding is unclear.

Vacated and remanded for reconsideration of net costs paid toward husband's home and award of net costs to wife; otherwise affirmed.