Argued and submitted January 6, property division reversed and remanded;
otherwise affirmed July 15, 2015

In the Matter of the Marriage of

Debbie L. FINE,
nka Debbie L. Thomason,
*Petitioner-Respondent,*
*and*

Scott A. FINE,
*Respondent-Appellant.*

Josephine County Circuit Court
10DR0890; A154076

355 P3d 198

■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■

George W. Kelly argued the cause and filed the briefs for
appellant.

Amanda R. Benjamin and Hornecker Cowling LLP filed
the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge,
and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Husband appeals a general judgment of dissolution, seeking a modification of the property division and spousal support award. He asserts that the trial court erred when it (1) miscalculated the amount of money that wife withdrew from the parties' joint bank accounts, and failed to account for that amount in the property division; (2) failed to account, in the property division, for $165,000 worth of payments that were made from joint funds toward a debt that wife owed to her parents for the purchase of Thomason Enterprises; and (3) denied husband spousal support. We reject husband's third assignment of error without discussion and write only to address husband's first and second assignments of error relating to the property division.

Regarding husband's first assignment of error, we conclude that the court's finding that wife had transferred only $138,516 from the parties' joint accounts was supported by evidence in the record, but that the court's discretionary decision to take "no action" regarding those transferred funds was based on a factual finding that was not supported by any evidence in the record. Regarding husband's second assignment of error, we conclude that the court's decision to disregard husband's contribution to the payment of wife's debt to her parents was not adequately explained by the court. Accordingly, we reverse and remand the property division, and we otherwise affirm.

We decline to exercise our discretion to review this case *de novo*. *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) (we exercise our discretion to review *de novo* only in "exceptional cases"). Therefore, we are "bound by the trial court's findings of historical fact that are supported by any evidence in the record." *Porter and Griffin*, 245 Or App 178, 182-83, 262 P3d 1169 (2011). We present the facts consistently with that standard.

Husband and wife met in 2004, began cohabitating later the same year, married in 2007, and separated in September 2010. The parties have no children together, but wife has three children from a previous marriage, one of whom was still a minor at the time of the dissolution.

Wife is the owner of Thomason Enterprises, Inc., an S corporation doing business as the Galice Resort. Wife and her previous husband purchased the corporation from wife's parents in 1995, for $750,000, with payments made over time. After the dissolution of wife's first marriage, wife continued to hold the shares of stock and continued to make the monthly payments under the purchase agreement. During husband and wife's marriage, wife made the $5,000 monthly payments from a joint bank account at Liberty Bank. When the parties had first opened the Liberty Bank joint account, the account had been funded, in part, by a contribution of $100,000 from each party. Over the course of the three-year marriage, a total of $165,000 was paid from the parties' Liberty Bank joint account toward wife's debt to her parents. Husband did not obtain any shares of stock in the corporation, by gift or otherwise, and he agrees with wife that he has never been considered a shareholder of the corporation.

Husband was a firefighter when the parties met. Then, shortly after husband and wife began cohabitating, husband became a resort employee, performing a variety of jobs, as needed, to maintain the resort and its various operations. At first, he continued to also work part-time as a firefighter, but, over time, husband became increasingly involved in the resort. The court found that husband "was paid for his work during the time he was there—and in some years, paid overly generously," and that he had left the business in "more or less the same condition as when he arrived."

Husband and wife maintained several joint bank accounts during the marriage, and they conducted their personal and business affairs both from their various personal and business accounts and in cash transactions. During the dissolution proceedings, wife admitted that their personal and business accounts were all commingled, and she "freely

wrote checks on the Galice Resort account that were for personal use." Thus, as the court noted in its letter opinion, it was "impossible to determine, dollar by dollar, which party paid for a particular asset or obligation."

Just before the parties separated, wife transferred funds from the parties' joint bank accounts to her own separate accounts. According to husband, wife transferred a total of $194,389.67 from four joint accounts. However, at trial, wife testified that she did not know whether one of the accounts, at South Valley Bank & Trust (South Valley),[1] was a joint account, because the name on the account was hers alone. When asked how many bank accounts the parties had at that particular bank, wife answered, "I had one and then we were both signers on it." Husband submitted an exhibit showing a handwritten deposit slip for that bank account, on which wife had written both husband's and wife's names. However, another exhibit included a bank statement for that account showing wife's name only. That bank statement shows that wife withdrew $55,873.92 from the account on August 9, 2010, approximately one month before the parties separated, and another document shows that the same amount of money was deposited into an account at another bank, in wife's name only, the same day.

After a six-day trial, the court issued a detailed letter opinion in which the court addressed, among other things, the division of the parties' multiple real properties and business interests. Regarding the credibility of the parties and the approach that the court took in dividing their property, the court noted:

> "In sum, the court found it difficult to rely on either party's uncorroborated testimony. Further, their hostility toward one another during the trial was palpable. The court has no reason to believe that either would willingly abide by an order requiring some level of cooperation in unwinding their affairs. Accordingly, the court must disentangle them as directly and as simply as possible.

---

[1] The record shows that the account with South Valley was previously held through "Home Valley Bank"; for clarity, we refer to that account as the "South Valley" account throughout this opinion.

"Further, the court notes that it is impossible to determine, dollar by dollar, which party paid for a particular asset or obligation. The parties conducted their personal *and* business affairs both from their various personal and business bank accounts and in cash transactions. Their tax accounting did not necessarily reflect actual and allowable *business* expense deductions, and Wife in any event has filed amended tax returns for recent years. Wife admitted that the personal and business accounts were all commingled. Wife freely wrote checks on the Galice Resort account that were for personal use (Ex 291). The true records are impossible to reconstruct. Indeed, it would require the services of a forensic accountant, and Husband in the end was unwilling to pay the high cost of such services. The court is not now going to attempt that effort. Thus, the court necessarily focuses on the larger picture, which again is to disentangle the parties as completely and equitably as possible."

(Emphases in original.)

The court divided the parties' real property as follows:

- Landau Lane residence. Wife owned this residence before the marriage and largely maintained it as a separate asset during the marriage. The court awarded this property to wife.

- Ferry Road residence. Husband owned this residence before the marriage, and wife did not contribute to its purchase or maintenance. The court awarded this property to husband.

- Galice Road residence. Wife owned this residence before the marriage, and it is used as a rental property for the Galice Resort. In 2009, wife deeded an interest in the property to husband, after he contributed $25,000 to refinance it. The court awarded this property to wife, but required her to reimburse husband for his $25,000 contribution.

- Mountain Home Drive residence. The parties purchased this residence during the marriage, and they lived in the residence together until their separation in September 2010. Thereafter, wife continued to live in the home and paid the mortgage, taxes, and

insurance, without assistance from husband, up until the time of the dissolution. The court required that the property be sold and the proceeds divided equally. The court allowed wife to occupy the residence until it was sold. The court required that wife continue to pay the mortgage, taxes, and insurance, and any necessary expenses to prepare the property for sale, but it also required husband to reimburse her for half of those expenses from his share of the sale proceeds.

- Peavine Road property. Wife purchased this property from Thomason Enterprises before the marriage, and it was largely maintained by wife as a part of the Galice Resort operation. The court awarded this property to wife.

- Three parcels of land underlying the Galice Resort. Wife purchased this property from Thomason Enterprises before the marriage. During the marriage, husband, through a loan from his mother, paid off a $31,825 loan on the property that was owed by Thomason Enterprises. The court awarded this property to wife, but required her to reimburse husband for his contribution of $31,825.

Regarding the parties' business interests, the court awarded Thomason Enterprises to wife, along with all business obligations, including the repayment of the remaining debt to her parents. The court denied husband's request for a money award for an amount equal to half of the increase in the company's value, concluding that the company's value did not increase during the marriage and, alternatively, whatever nominal increase in value did exist was not attributable to husband. The court also awarded a second business enterprise to wife, with a money award of $5,700 to husband to compensate him for his contribution to the increased value of that second enterprise.

After the court issued its letter opinion, husband submitted objections to the proposed form of the general judgment, in which he also challenged some of the court's decisions set forth in its letter opinion. Husband argued, among other things:

"The court calculates a total fund (taken from various accounts by [wife]) of $138,516. The court then determines that [wife] used that sum for 'the mortgage and expenses of maintaining the Mountain Home property during the two years the parties have been separated.'

"The annual mortgage payment (including property taxes) is approximately $24,000. Two years of mortgage is $48,000. That leaves $90,516 for 'other expenses' which were not identified or quantified at trial. This is an extremely large amount to attribute to 'other expenses' of the Mountain Home property. Nevertheless, if the court were to choose not to reconsider this award, there is another account which the court did not include in its calculation of the $138,516. Exhibit 250-6 shows South Valley Bank account of $55,873[.92]. In light of the above, this amount should be awarded to [husband]."

(Citations to the record omitted.) Husband also argued that he "should get reimbursement for his assistance in payments toward the Note to [wife's mother] because [wife] used joint money to pay for an asset that she is being awarded[.]"

During a hearing, the court rejected all of husband's objections, and stated that it would not consider those arguments any further. Husband now appeals.

In husband's first assignment of error, he argues that the court erred when it (1) found that wife had taken only $138,516.00 from the parties' joint accounts, instead of $194,389.67,[2] and (2) decided to take "no action with respect to Wife's transfer of these funds to her own accounts."

We begin with husband's argument that the trial court "miscalculated" the amount of money that wife withdrew from the parties' joint bank accounts. There are four bank accounts at issue in this case. The trial court agreed with husband that three of those accounts were joint accounts, and that wife withdrew a total of $138,516.00 from those three accounts. However, the court stated in its letter opinion that it "ha[d] not found documentation

---

[2] In husband's appellate brief, he states that the total amount withdrawn was $194,568.24, but he misstates the amounts withdrawn from two of the uncontested accounts. Based on husband's contentions at trial and the evidence in the record, we understand that the total amount at issue is $194,389.67.

in evidence to support Husband's claim of [$194,389.67]." Thus, in effect, the court found that there was insufficient evidence that the $55,873.92 that wife withdrew from the fourth account—the South Valley account—was money that was "transferred * * * from the parties' joint accounts to her own separate accounts." We understand the court's finding to imply that there was insufficient evidence that the South Valley bank account was a joint account. As noted above, we are "bound by the trial court's findings of historical fact that are supported by any evidence in the record." *Porter*, 245 Or App at 182-83. Thus, the first question in this case is whether there was any evidence in the record to support the trial court's finding that the South Valley bank account was not a joint account, and, therefore, that wife had transferred only $138,516.00 from the parties' joint bank accounts to her own separate accounts.

As husband points out, wife acknowledged during trial that the amount of money that the parties had in the bank, and that she transferred to her own accounts, was approximately $194,000. However, wife testified that she did not recall whether the South Valley account was a joint account, and she stated that *she* had an account at South Valley and that husband and wife were both "signers on it."

We have identified only one South Valley bank statement in the record. That statement, dated September 17, 2010, includes a list of the transactions for that account from August 20, 2009 to August 10, 2010, including a withdrawal of $55,873.92 on August 9, 2010. At the top of that document, along with the bank's name, address, and phone number, the date, and a personal banker's contact information, wife's name and address are listed. Husband's name is not printed anywhere on the bank statement.

Other than that bank statement, we have identified two additional documents in the record relating to the South Valley account, both created by wife herself: a handwritten deposit slip on which wife wrote both husband's and wife's names in the space provided for "Name," and a typed list of transactions that lists the name of the bank and the account number, but does not contain any further identifying information.

Based on that evidence, we conclude that the trial court's finding that the South Valley bank account was wife's own separate account, and, thus, that the $55,873.92 in the South Valley bank account was not money that was "transferred * * * from the parties' joint accounts to [wife's] own separate accounts," is supported by evidence in the record—that is, the South Valley bank statement, which listed wife's name only, and not husband's name. Therefore, the court did not err in finding that wife had transferred only $138,516 from the parties' joint accounts to her own individual accounts.

Having concluded that the court did not miscalculate the amount that wife had taken from the parties' joint accounts, we now consider whether the court erred when it took "no action with respect to Wife's transfer of these funds to her own accounts." In its letter opinion, the court stated:

"Although Wife did not account for her disposition of these funds, she is the one who has been paying the mortgage and expenses of maintaining the Mountain Home property during the two years the parties have been separated. The court has insufficient evidence to find that Wife has misappropriated these funds. Accordingly, the court takes no action with respect to Wife's transfer of these funds to her own accounts."

In other words, the court found that wife had spent the parties' joint funds on the parties' joint responsibilities during the parties' separation—specifically, "the mortgage and expenses of maintaining" the marital home—and, therefore, decided not to award husband an equalizing judgment for the value of any portion of those funds.

On appeal, husband argues that the trial court's decision is "unsupportable" because the mortgage, insurance, and taxes for the Mountain Home Drive residence, when totaled over two years, amounted to $48,808 only,[3] which is much less than $138,516. Husband also notes that wife was allowed to live in the home, rent free, during the

---

[3] Wife testified at trial that the mortgage for the Mountain Home Drive residence, including taxes and insurance, was $2,017 per month; husband's assertion that those expenses amounted to $48,808 over two years is based on that testimony.

entire separation. Husband argues that it was not just and proper to allow wife "to take a large sum of jointly held money and use if for her own purposes." Thus, according to husband, the court should have treated that money as property that wife had received in the dissolution, and "should then have given husband an equalizing judgment to balance the accounts."

Wife responds that the court's decision was just and proper under all the circumstances, based on wife's testimony and the court's finding that husband had not provided evidence that she had misappropriated the funds. Specifically, wife points to her testimony that she had used the funds from the joint accounts to "maintain herself and continue paying necessary obligations during the lengthy separation, including the mortgage insurance, property taxes, utilities, and maintenance on the several separate rental properties and lots," in addition to the marital residence on Mountain Home Drive. Wife adds that she also testified that she had used some of the funds to pay bills owed for remodeling the Mountain Home Drive residence, which husband and wife had planned to do before the parties separated. According to wife, the court's evaluation of wife's credibility regarding her use of the funds, and its finding that husband failed to present sufficient evidence that wife had misappropriated the funds, are entitled to our deference on appeal.

When a court renders a judgment of dissolution, the court may provide in the judgment for "the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances." ORS 107.105(1)(f). As the Supreme Court explained in *Kunze and Kunze*, 337 Or 122, 135-36, 92 P3d 100 (2004), the inquiry into the "just and proper" division "takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable," such as the preservation of assets, the achievement of economic self-sufficiency for both spouses, the particular needs of the parties and their children, and the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling. "The trial

court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion," and that discretionary determination should not be disturbed unless "the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Id.* at 136 (citing *Haguewood and Haguewood*, 292 Or 197, 199-204, 638 P2d 1135 (1981)).[4] Again, we are "bound by the trial court's findings of historical fact that are supported by any evidence in the record." *Porter*, 245 Or App at 182-83.

Here, the property at issue is a sum of $138,516 that wife transferred from the parties' accounts into her own separate accounts, and then spent during the two years that the parties were separated. The court noted that, "[a]lthough wife did not account for her disposition of these funds," wife had "been paying the mortgage and expenses of maintaining" the Mountain Home Drive residence for the two years during which the parties had been separated. In other words, we understand that the court denied husband's request for reimbursement of half of that money because it had concluded that wife spent the funds maintaining the parties' joint property—the Mountain Home Drive residence.

In general, the preservation of assets—here, the marital home—is a consideration that should be taken into account when determining what division of property is "just and proper" under ORS 107.105(1)(f). *Kunze*, 337 Or at 136. However, to the extent that the court found that the entire amount of $138,516 was spent on the "mortgage and expenses of maintaining" the Mountain Home Drive residence during the parties' two-year separation, we conclude that there is insufficient evidence in the record to support that finding. Indeed, the court itself noted that wife did not account for her disposition of the funds, and it did not make

---

[4] As further explained in *Kunze*, 337 Or at 134, ORS 107.105(1)(f) sets forth a rebuttable presumption of equal contribution that applies to property acquired during the marriage, and which either party may seek to rebut by "proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset." We need not discuss that presumption in this case, because neither husband nor wife attempted to rebut the statutory presumption of equal contribution as to the money taken from the parties' joint funds.

any findings regarding how much money wife actually spent on the Mountain Home Drive residence. On appeal, wife has not pointed to any evidence in the record to support a finding that those costs amounted to at least $138,516, and we have found none. Moreover, according to wife's own testimony and her arguments on appeal, some of the expenses that were paid for out of those funds were not related to the maintenance of the Mountain Home Drive residence, such as the amounts paid for "mortgage insurance, property taxes, utilities, and maintenance on the several separate rental properties and lots" that were ultimately awarded to wife as her own separate property.

Thus, notwithstanding the court's conclusion that there was "insufficient evidence to find that Wife has misappropriated these funds," the court failed to identify any evidence to support its finding that wife spent the funds on the expenses of the Mountain Home Drive residence. Because the court's discretionary decision regarding what was "just and proper in all the circumstances" was based on a factual finding that was not supported by any evidence in the record, we reverse and remand for the court to reconsider its decision not to award husband an equalizing judgment for the value of any portion of those funds.

In husband's second assignment of error, he argues that the court erred by failing to take into account payments totaling $165,000 that were made during the marriage, using funds from the parties' Liberty Bank joint account, toward the debt that wife owed her parents for the purchase of Thomason Enterprises. In its letter opinion, the court noted:

> "Most of Wife's payments to her parents were actually made from the parties' joint account (Ex 261). After the dissolution was filed, however, Wife began making payments from the Galice Resort account (Ex 262). Wife explained that Husband insisted that she make the payments from the joint account because they were to join their finances even though Wife preferred to maintain separate accounts."

Although the court did not explicitly address the issue of reimbursing husband for his contribution to the reduction of wife's debt, it ultimately concluded that husband's

involvement with the resort had not increased the business's value, and that he had left the business in "more or less the same condition as when he arrived." The court awarded the business to wife "along with all business obligations related thereto including repayment of the debt to her parents."

Husband argues that, because payments totaling $165,000 were made using the funds from the Liberty Bank joint account, half of that amount should be viewed as a contribution that husband made toward paying off wife's debt from the purchase of Thomason Enterprises. Because the company was awarded to wife, husband contends that his half of the payments made during the marriage should be awarded to him. In husband's view, this property should be treated as similar to the Galice Road residence, which the court awarded to wife while awarding husband $25,000 as reimbursement for a payment he had made when the property was refinanced, and the three lots adjacent to the Galice Resort, which the court awarded to wife while awarding husband $31,825 as reimbursement for a loan on that property that husband had paid off. In other words, husband argues that the court abused its discretion in determining that it was just and proper that wife should receive Thomason Enterprises without reimbursing husband for his contribution to paying off the debt on that business. We note that husband does not argue that the court abused its discretion in awarding wife Thomason Enterprises "along with all business obligations related thereto including repayment of the debt to her parents"; instead, husband argues only that he should be reimbursed for the contribution that he made toward paying off the debt owed to wife's parents.

As set forth above, "[t]he trial court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion," and that discretionary determination should not be disturbed unless "the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Kunze*, 337 Or at 136. "When a trial court makes a discretionary decision, the record must reflect a proper exercise of that discretion." *Olson and Olson*, 218 Or App 1, 15, 178 P3d 272 (2008). Furthermore, although a court's explanation of its decision "need not be lengthy or complex," it "must comport with the

applicable legal framework and describe the basic reasons for the decision." *Id.*

As husband notes, the trial court did not explain in its letter opinion why it denied husband's request for reimbursement of those payments. It is undisputed that the $5,000 monthly payments were made out of a joint checking account, the Liberty Bank joint account, to which husband and wife had each contributed at least $100,000. The court appears to have found that wife would not have used joint funds if husband had not insisted that she do so, and that, immediately after the parties separated, she began making the payments out of a different account—the Galice Resort account; however, we cannot determine what effect, if any, those findings had on the court's decision not to award husband an equalizing judgment for half of the amount that was paid from the parties' joint checking account. Although the court concluded that husband was not entitled to a money award for any increase in the company's value, the court did not specifically address husband's request to be reimbursed for half of the value of the payments made toward wife's debt to her parents. Because the court failed to describe the basic reasons for its denial of husband's request, *Olson*, 218 Or App at 15, we are not in a position to consider whether the court "misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Kunze*, 337 Or at 136. Accordingly, on remand, the court should also reconsider the portion of the judgment relating to the award of Thomason Enterprises to wife.

Property division reversed and remanded; otherwise affirmed.