GARRETT, J.
*866 Husband appeals a dissolution judgment, assigning error to the trial court's property division. He argues that the trial court erred in finding that wife rebutted the presumption of equal contribution with respect to three marital assets credited to wife and that it abused its discretion in awarding wife those amounts, along with two other nonmarital assets. We conclude that the trial court did not err with respect to the property division, and we reject husband's second assignment of error concerning the spousal-support award without written discussion. Accordingly, we affirm the trial court's judgment.
Husband requests that we review the property division de novo , asserting that a final decision on appeal "would save the parties many months of uncertainty" and "would prevent the need to return to the trial court to reopen their litigation." Husband also points to the fact that, at the time of the hearing, husband had moved to Oklahoma, and wife was contemplating moving to Florida. We exercise our discretion to review a matter de novo only in "exceptional" cases. ORS 19.415(3)(b) ; ORAP 5.40(8)(c). Although *442 concerns about judicial economy are pertinent when determining whether to exercise our discretion, the concerns raised by husband are not unique to this case, and, therefore, this case is not an exceptional one for which de novo review is warranted. Cf. Benson and Benson , 288 Or. App. 619, 622, 406 P.3d 148 (2017) (concluding that de novo review was warranted because the "concerns about judicial economy and the need to provide a final resolution to the parties" were "unique to [the] appeal").
Because we decline husband's request, "we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record." Morton and Morton , 252 Or. App. 525, 527, 287 P.3d 1227 (2012). If the trial court did not make express findings, we assume "that the trial court found the facts in a manner consistent with its ultimate conclusion." Kotler and Winnett , 282 Or. App. 584, 597, 385 P.3d 1200 (2016). We state the facts consistently with those principles.
*867 Wife resided in Florida when she met husband, and she moved into his apartment in Oregon in 1999. At that time, she owned a condominium in Florida. She also owned a certificate of deposit account (CD) with a Florida bank, and she later transferred those funds into a CD with Oregon Community Credit Union (OCCU), less some cash that she kept. In July 2000, wife purchased a home on Lasater Boulevard in Eugene (the Lasater residence), which eventually became the couple's marital residence. She paid the down payment and closing costs for the home. Wife refinanced the Lasater residence in 2009, and, at that time, she added husband to the title and as an obligor for the new mortgage.
Also before the marriage, wife took out a mortgage to purchase a property on Linden Avenue in Springfield (the Linden property), which the couple used as a rental property. Wife put the title for the Linden property in husband's name. Wife paid the down payment and closing costs for that property, using funds from the sale of her Florida condo.
The couple married in July 2002. During the marriage, the couple dealt with their shared finances using an OCCU account opened by wife, which was jointly held with husband for most of the marriage. That account contained multiple subaccounts, including wife's checking account (the 1062 account), an account used for the couple's joint expenses (the operating fund), and an account used for the Linden rental property's finances (the rental account). The couple considered the 1062 checking account to be wife's separate subaccount, and she deposited her paychecks into it. Wife made the entire OCCU account "joint" with husband because she wanted him to be able to see the balances in the various subaccounts. Husband had a different account with OCCU that contained a checking and savings account; the couple considered that account to be husband's separate account, but it was also nominally "joint" with wife. Wife had another account with OCCU that was not joint with husband that she used for business expenses, to receive reimbursements from her employers, and to make mortgage payments. Wife also had a separate savings account with Capital One.
*868 For most of the marriage, wife and husband each made fixed monthly deposits into the "operating fund" from their individual earnings. Wife kept track of their spending on a spreadsheet, and she paid for joint expenses-such as food, household maintenance, and vacations-from the "operating fund." If the couple's joint spending exceeded the balance of the operating fund, they would "split the overage." Husband was an authorized user on wife's credit card account, and each spouse paid for their individual credit card purchases from their respective earnings. Throughout the marriage, wife paid the mortgage for the Lasater residence in full from her earnings, and husband generally paid all of the utility bills for the home from his earnings (or, when he had no earnings, from his savings or unemployment benefits). From the beginning of the marriage until dissolution, wife worked as a software consultant and project manager, and her annual earnings ranged from $64,408 in 2002 to $113,700 in 2013.
For over a decade, husband worked as a wrestling coach and an administrator in a *443 university athletic department. When the university eliminated husband's position in 2009, he developed a plan to open a "pub/lottery" named Oasis. Husband ran the Oasis business, while wife maintained her full-time employment as a consultant. The couple used the Linden property as collateral to borrow funds to keep the business in operation (the Oasis loan). In February 2011, the couple closed Oasis because it was not profitable. From the time after Oasis closed until the dissolution, husband worked as a salesman and wrestling official, and he had little to no income.
Wife refinanced the Lasater residence in 2013 to obtain a lower interest rate, and she put the new loan solely in her name. Wife paid the down payment and closing costs for the refinance with funds from her Capital One savings account. Wife continued to make the entire mortgage payment for the property.
In April 2013, wife's OCCU CD matured, and she transferred the funds into her Capital One account. In May 2013, the parties paid off the Oasis loan, using $65,200 originating from wife's nonjoint accounts. The couple agreed that *869 they would subsequently use income from the Linden rental property to "replenish" those funds, which wife regarded as her "emergency" savings. Those savings were not "replenish[ed]" before the dissolution.
In February 2014, wife petitioned for dissolution. In August 2014, the trial court conducted a trial on the issues of property division and spousal support. At the end of trial, the court took the matter under advisement. In an opinion that followed, the trial court ruled:
"THE COURT FINDS that Wife rebutted the statutory presumption of equal contribution and adopts [wife's] exhibits [demonstrating her proposed property division] as part of this order, finding that they represent a just and proper division of property."
The court awarded the Lasater residence to wife, and reduced the divisible equity of the home by the amount that wife had paid before the marriage for the down payment and closing costs.[1] Consistently with wife's proposed property division, the court also reduced the marital value of the Lasater home by $35,049 for the costs associated with its refinancing in 2013 and by $65,200 for wife's "separate" funds that were used to pay down the Oasis loan. The court concluded that wife's Capital One account, which had a balance of $24,814.49 at the end of July 2014, did not have marital value subject to equitable division. The court ordered that the Linden property be sold, that the marital value of the property be reduced by $33,254.14 to account for wife's premarital down payment, and that the remaining proceeds be divided equally between husband and wife. Consistently with wife's proposal, the court ordered wife to pay an equalizing judgment of $40,648.60. The court did not provide any additional explanation for the property division.
When a court enters a judgment dissolving a marriage, it is empowered "to distribute any real or personal property that either or both of the parties hold at the time of dissolution, including property that the parties had brought into the marriage"; all such property is considered marital *870 property. Kunze and Kunze , 337 Or. 122, 133, 92 P.3d 100 (2004). Marital assets "are a subset of marital property," and they "consist of property acquired during the marriage." Johnson and Johnson , 277 Or. App. 1, 13 n. 1, 370 P.3d 526 (2016) (internal quotation marks and brackets omitted). Marital assets are subject to the statutory presumption of equal contribution, meaning that "there is a rebuttable presumption that both parties have contributed equally to the acquisition of" marital assets, regardless of "whether such property is jointly or separately held." ORS 107.105(1)(f)(C). A party seeking to rebut the presumption of equal contribution for a particular asset " 'has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset.' " Celano and Celano , 287 Or. App. 173, 176, 400 P.3d 1021 (2017) (quoting *444 Kunze , 337 Or. at 134, 92 P.3d 100 ). In determining whether a party has rebutted the statutory presumption, the commingling of assets is relevant only when an act of commingling " 'preclud[es] the court from identifying that spouse's separate contribution with sufficient reliability' " to determine whether or not " 'both spouses have contributed equally to the disputed asset.' " Tsukamaki and Tsukamaki , 199 Or. App. 577, 584, 112 P.3d 416 (2005) (quoting Kunze , 337 Or. at 138, 92 P.3d 100 ). After making those determinations, the court makes a division of marital property in the dissolution judgment that it deems "just and proper in all the circumstances." ORS 107.105(1)(f).
Husband assigns error to the trial court's property division. He first argues that the trial court erred in finding that wife had rebutted the statutory presumption of equal contribution with respect to the contents of wife's Capital One savings account, the amount she spent in refinancing the Lasater residence in 2013, and the payments toward the Oasis loan from her separate funds. Husband also argues that the trial court abused its discretion in determining the "just and proper" division of property by awarding those sums to wife, along with the premarital amounts that wife spent in purchasing both the Lasater residence and the Linden property.
As stated above, because we decline husband's request to undertake de novo review, we assume that the *871 trial court made factual findings consistent with its rulings, and we are bound by the trial court's explicit and implicit findings if there is any evidence to support them. In evaluating the property division challenged by husband, we first turn to whether the court erred in finding that wife had rebutted the presumption of equal contribution with respect to the three marital assets awarded to her at issue on appeal.[2]
With respect to the Capital One account, we understand husband to argue that the trial court erred by concluding that wife had rebutted the presumption because she provided insufficient documentary evidence tracing the source of the funds in the account to her premarital CD with the Florida bank. Husband also argues that the Capital One funds had been inextricably commingled with joint funds, and, therefore, it was impossible to reliably discern wife's separate contribution to their acquisition.
Both of husband's arguments fail because the trial court's findings are supported by sufficient evidence. First, in finding that wife had rebutted the presumption, the court implicitly credited wife's testimony that her premarital CD was the original source of the Capital One funds and that husband did not contribute equally to their acquisition. Although wife did not have written documentation tracing the complete history of the CD funds, the court was permitted to rely on wife's testimony to fill in the gaps in the documentation that she provided. See Kotler , 282 Or. App. at 597-98, 385 P.3d 1200 (observing that the trial court, sitting as factfinder, was permitted to accept the husband's testimony, despite any confusion or conflict between his testimony and his documentation, and that the probative value of the conflicting evidence was "solely for the trial court to determine").
There was also sufficient evidence to support the trial court's implicit finding that the assets in the Capital One account were not inextricably commingled-i.e. , that they were reliably identifiable as separate funds. Wife *872 provided documentation showing the balance of her premarital CD and that she used roughly the same amount of money to open a CD with OCCU, with the difference in value explained by her testimony that she kept some cash from the original CD. Wife provided statements showing that the value of the matured OCCU CD was deposited in the 1062 checking account (an account that the couple considered to be her "separate" account), and that she transferred approximately the same amount of money into her Capital One account, an account that she did not share with husband and to which he did *445 not have access. Thus, there was sufficient evidence that she had segregated the premarital-CD funds from joint marital funds. Accordingly, the trial court did not err by finding that wife had rebutted the presumption of equal contribution as to those funds.
Next, we turn to whether the trial court erred by concluding that wife had rebutted the statutory presumption for her contributions to paying down the Oasis loan. On appeal, husband argues that "wife did not demonstrate that the money paid was her 'separate' money" because "the entirety of the $65,200 came from accounts that were funded from a mixture of deposits," including wife's paychecks, deposits from unknown sources, and deposits from accounts on which husband was the "primary." In so arguing, husband appears to presuppose that, in order to rebut the presumption of equal contribution, wife was required to prove that the source of all of the relevant funds was premarital. Husband is incorrect-wife was not required to trace the funds back to a premarital source to rebut the presumption, and wife's theory before the trial court did not depend on a finding that the source of the $65,200 was premarital. See Hixson and Hixson, 235 Or. App. 217, 227, 230 P.3d 946, clarified on recons , 235 Or. App. 570, 232 P.3d 996 (2010) (concluding that the husband rebutted the presumption of equal contribution with respect to his veterinary clinic's increase in value during the marriage upon finding that "wife's overall contribution to the growth of the business was less than equal").[3] Instead, wife argued-and *873 the court implicitly found-that husband did not contribute equally to the acquisition of the $65,200 because the parties had agreed to keep their individual earnings separate except for joint expenses, the funds came from wife's separate earnings and reimbursements during the marriage, and husband had agreed that wife would be reimbursed for the payments, which demonstrates that the parties did not consider the payments to be joint expenses. That finding was supported by evidence, including wife's testimony that each party considered their earnings from employment and their personal expenditures to be their own. She provided documentary evidence corroborating that testimony, including a spreadsheet showing the couple's regular accounting of personal and joint expenses. In addition, husband testified that he had never deposited his earnings into accounts for which wife was the "primary," and there is no indication that he had contributed to wife's earnings in any undercompensated ways, such as by being a homemaker or indirectly facilitating wife's career. Cf. ORS 107/105(1)(f)(B) ("The court shall consider the contribution of a party as a homemaker as a contribution to the acquisition of marital assets."). From that evidence, the trial court could find that funds deposited into accounts over which wife either had exclusive control, or on which she was the "primary," originated from wife's individual earnings and did not result from any efforts by husband. Moreover, in the time leading up to the Oasis loan payments, husband earned little to no income, which further supports a finding that husband did not equally contribute to the acquisition of those funds, in the absence of evidence of nonfinancial contributions. Thus, the trial court did not err by finding that wife had rebutted the statutory presumption as to the $65,200.
We also reject husband's argument that the trial court erred by finding that wife rebutted the statutory *874 presumption with respect to the down payment and costs for refinancing the Lasater residence in 2013. The trial court implicitly found that the payment was made from wife's "separate" funds. That finding is supported by evidence showing that wife's nonjoint Capital One savings *446 account was the source of that payment, which, as noted above, was an account into which husband did not deposit funds and over which he did not exercise any control. In addition, in the years preceding the refinance, husband had very little income, while wife continued to receive a salary from full-time employment. Accordingly, there was sufficient evidence for wife to establish by a preponderance that husband did not contribute equally to the acquisition of those funds.
Having concluded that there was sufficient evidence to support the trial court's findings that wife rebutted the presumption of equal contribution as to each of the above-discussed marital assets, we turn to whether, under the relevant statutory and equitable considerations, the trial court's division of property satisfied the requirement that the division be "just and proper in all the circumstances." See Kunze , 337 Or. at 135, 92 P.3d 100 ("[T]he court's final inquiry as to the 'just and proper' division concerns the equity of the property division in view of all the circumstances of the parties."). " 'The trial court's ultimate determination as to what property division is "just and proper in all the circumstances" is a matter of discretion,' and that discretionary determination should not be disturbed unless 'the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires.' " Fine and Fine , 272 Or. App. 307, 316-17, 355 P.3d 198 (2015) (quoting Kunze , 337 Or. at 136, 92 P.3d 100 ). "Absent an error in methodology or an outcome outside of the legally permissible range, we will affirm a trial court's determination as to what property division is just and proper." Van Winkel and Van Winkel , 289 Or. App. 805, 810, 412 P.3d 243 (2018).
When a party rebuts the presumption of equal contribution as to an asset, "it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption," Kunze , 337 Or. at 135, 92 P.3d 100, "unless other considerations make it just and proper to distribute it differently," Fay and Fay , 251 Or. App. 430, 437-38, 283 P.3d 945 (2012). In addition to the presumption of equal contribution, *875 relevant equitable considerations include "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties ***; and *** the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." Kunze , 337 Or. at 136, 92 P.3d 100. In evaluating the extent to which a party has commingled separate property, the relevant inquiry is whether the spouse who separately acquired the asset " 'intended for that property to become the joint property of the marital estate.' " Tsukamaki , 199 Or. App. at 585, 112 P.3d 416 (quoting Kunze , 337 Or. at 142, 92 P.3d 100 ). In assessing that spouse's intent, courts consider " '(1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over the disputed property; and (3) the degree of reliance upon the disputed property as a joint asset.' " Id. at 585, 112 P.3d 416 (quoting Kunze , 337 Or. at 141, 92 P.3d 100 ).
As a preliminary matter, husband contends that the trial court failed to adequately explain the basis for its chosen property division, arguing that "we cannot tell" whether the trial court considered relevant factors (such as commingling) in determining that wife's proposed property division was just and proper under the circumstances.
" '[T]o earn the measure of deference to which discretionary decisions are entitled on appeal, a trial court's property award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes.' " Van Winkel , 289 Or. App. at 810, 412 P.3d 243 (quoting Olson and Olson , 218 Or. App. 1, 16, 178 P.3d 272 (2008) ). "[A]lthough a court's explanation of its decision 'need not be lengthy or complex,' it 'must comport with the applicable legal framework and describe the basic reasons for the decision.' " Fine , 272 Or. App. at 320, 355 P.3d 198 (quoting Olson , 218 Or. App. at 15, 178 P.3d 272 ). Here, we conclude that, when viewed in context, the trial court's rulings provide a sufficient explanation for its property division.
*447 Before the trial court, husband argued that he should be awarded half of the value of all of the parties' accounts because, according to him, the couple had not agreed to keep their finances separate. He argued that all *876 of the jointly held bank accounts contained what the couple considered to be joint funds. He also argued, in essence, that because wife had moved funds from joint accounts into her separate accounts, joint funds had been commingled with her separate funds. Wife argued that the parties maintained separate finances throughout the marriage and that the only assets that they intended to "commingle" were "their joint real and personal property, [the] rental account, and [the] operating fund." After the parties rested, the trial court engaged in a colloquy with the parties, and, at one point, had a discussion with husband about his ability to get health insurance once the dissolution was finalized. Before making its final decision, the trial court took the matter under advisement in order to further examine the parties' exhibits.
Thus, within its context, the court's ruling reflects a proper exercise of discretion. Both parties made developed arguments as to whether wife had commingled her separate assets and the parties' intent with respect to their finances, and the court heard extensive testimony about the couple's financial history and husband's ability to be financially independent at the time of dissolution. Wife's proposed property division was not an extreme proposal, and she did not dispute that the equity in the Lasater and Linden properties should be considered marital assets. Accordingly, the trial court's adoption of her proposal reflects that it applied the correct methodology and considered the parties' respective arguments regarding the property division, and that it ultimately determined that wife's proposed division was a "just and proper" one.
Turning to the trial court's property division itself, we conclude that the division was within its discretion. First, the court could properly award wife the premarital down payments and costs for the Lasater and Linden properties. Regardless of whether wife intended for the properties themselves to be integrated into the marital estate, the properties were originally acquired using wife's separate, premarital funds, and the court could find that wife did not intend those amounts to be integrated into the marital estate. Cf. Kunze , 337 Or. at 145-46, 92 P.3d 100 (concluding that the trial court did not abuse its discretion by awarding wife the entirety of *877 her premarital equity, reasoning that the husband was not entitled to part of the wife's premarital equity in a piece of property originally purchased by wife, despite the fact that husband's name was on the title at the time of dissolution). With respect to the Lasater residence, wife purchased the home before the marriage and consistently paid the mortgage from her individual earnings. In light of the fact that husband contributed significantly less to the home's equity, and wife made the down payment "free of any [financial] contributions" from husband, the trial court could properly award wife the amount she originally spent in purchasing the property. Id. , 337 Or. at 135, 92 P.3d 100. With respect to the Linden property, wife also did not dispute that the property was a marital asset subject to equitable division, and husband does not dispute that wife made the down payment for the property using money from the sale of her Florida condominium and without any financial contribution from him. Moreover, wife testified that the parties had agreed that, if the Linden property were ever sold, she would be entitled to recoup her original payment. Therefore, the trial court acted within its discretion by returning to wife her premarital investment in both properties.
It was also legally permissible for the trial court to award wife the contents of her Capital One account. Wife traced the source of those funds back to premarital assets, and, although she used the money from her premarital CD to set up a CD in the OCCU account that was nominally "joint" with husband, the court implicitly credited wife's testimony that the couple considered the subaccounts upon which wife was the "primary" to be her separate funds.[4] There is *448 no contrary indication beyond husband's general testimony that he was aware of the CD's existence and that he considered all of the assets held by wife to be joint assets, and, therefore, the record does not compel a finding that he had a reliance interest in the CD funds specifically. Thus, because any commingling of the CD funds with joint assets was minimal, and because husband raises no other considerations that would require a different result, we conclude that the *878 trial court properly could determine that the account was not subject to equitable division.
We also conclude that the trial court did not abuse its discretion by crediting $65,200 to wife for her individual contributions to the Oasis loan. Husband argues that the deduction is not just and proper, arguing that wife commingled the funds by using them to pay down "marital debt." We note that the trial court neither implicitly nor explicitly found that the Oasis loan was, in fact, marital debt, and in light of our obligation to view the evidence in the light most favorable to the trial court's conclusions, we reject husband's argument. The evidence does not require a finding that wife intended to integrate the funds into the marital estate; to the contrary, there was evidence to support the trial court's implicit finding that the parties intended to keep their finances separate and that husband had agreed that wife would be reimbursed for her contribution, a finding that is consistent with the parties' agreement to distinguish between their joint and their separate expenditures. No other equitable consideration requires a different result. From the record, the trial court could find that the Oasis business was primarily husband's idea and for husband's benefit. Although wife did not dispute that she contributed some of her time to the business, she maintained separate full-time employment while the business was open, and husband ran the business as his full-time employment. Accordingly, because the record supports a finding that wife did not intend to commingle the funds and that the couple had agreed that she would be repaid, the trial court did not abuse its discretion by crediting wife the $65,200.
Finally, the trial court did not abuse its discretion by crediting wife with the $35,049 used to pay to refinance the Lasater residence in 2013. Husband argues that, because the court awarded wife the Lasater residence and wife would, therefore, continue to pay the mortgage, she alone benefitted from the reduced interest rate obtained through the 2013 refinancing. That fact alone is not dispositive, however, and husband benefitted from wife's ownership of the Lasater residence in multiple ways. The record shows that husband lived in the Lasater residence for over a decade and never contributed financially to the mortgage payments.
*879 In addition, husband benefitted substantially from wife's acquisition of the Lasater residence, as the home was refinanced in 2009 in order to free up cash to pay off the Linden property, which the couple then used as collateral for loans to fund husband's Oasis business. In light of the benefits stemming from the Lasater residence that husband enjoyed, along with wife's decision to not contest the equitable division of the residence, the trial court's decision to award the refinancing costs to wife was within its discretion.
In sum, we conclude that the trial court did not err in concluding that wife rebutted the presumption of equal contribution with respect to the marital assets awarded to her, and the trial court did not abuse its discretion by ordering the property division. We reject husband's second assignment of error without written discussion.
Affirmed.

Wife did not dispute that the Lasater residence was a marital asset subject to equitable division.

Wife did not dispute that the contents of the Capital One account and the funds wife used for the Oasis loan payments and the Lasater refinancing costs represent "marital assets," i.e. , assets acquired during the marriage, and, accordingly, she did not dispute that the statutory presumption applied to them.

Husband goes on to assert, without citation, that this court has "always treated money received from employment as money to which both parties have contributed" (emphasis added); in other words, in husband's view, a spouse's earnings during a marriage are always marital assets for which the presumption is irrebuttable, and, because the funds at issue likely included wife's earnings, she cannot rebut the presumption. That is simply incorrect. To the contrary, we have concluded that the presumption can be rebutted with respect to assets acquired using one spouse's earnings during the marriage in circumstances where the parties had agreed to keep their "properties and earnings separate," and neither spouse "functioned as a homemaker." See Jacobs and Jacobs , 179 Or. App. 146, 153, 39 P.3d 251 (2002).

We note that husband does not raise a separate argument with respect to the amount that the CD funds increased in value during the marriage.